Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES LITIGATION | No. 2:08-MD-1919 MJP |
| | Lead Case No. C09-664 MJP |
| This Document Relates to: Lead Case No. C09-664 MJP | **DT-5:  DEFENDANT DELOITTE & TOUCHE LLP'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT** |
| | **NOTE FOR MOTION CALENDAR: March 29, 2010** |
| | **ORAL ARGUMENT REQUESTED** |

SUMMIT LAW GROUP PLLC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  THE COMPLAINT'S ALLEGATIONS ................................................................ 2

    A.  WaMu's Allowance For Loan And Lease Losses ..................................... 2

    B.  WaMu's Allowance Responded To And Reflected Market
        Conditions ................................................................................................. 3

    C.  Deloitte's Limited Role With Respect To WaMu's Financial
        Statements ................................................................................................. 4

    D.  Alleged False Statements Attributed to Deloitte ...................................... 4

III.  PLAINTIFFS' CLAIM FOR FRAUD SHOULD BE DISMISSED ................................ 5

    A.  Plaintiffs' Fraud Claim Must Satisfy The Heightened Pleading
        Standard Of Rule 9(b) .............................................................................. 5

    B.  Plaintiffs Fail To Allege Any Circumstances Of Deloitte's Alleged
        Fraud With The Requisite Particularity Under Rule 9(b) ......................... 6

        1.  Plaintiffs Fail To Allege Any Particularized Facts Showing
            A False Statement In WaMu's 2005, 2006 Or 2007
            Financial Statements .................................................................. 7

        2.  Plaintiffs Fail To Plead That Deloitte's Audit Opinions
            Contained A False Or Misleading Statement ............................. 8

    C.  Plaintiffs' Boilerplate Allegations Of Deloitte's Fraudulent Intent
        Are Insufficient to Support A Fraud Claim ............................................ 11

    D.  Plaintiffs Have Failed To Allege Actual Reliance On Alleged
        Misstatements ......................................................................................... 15

IV.  PLAINTIFFS' CLAIM FOR NEGLIGENT MISREPRESENTATION
    SHOULD BE DISMISSED .................................................................................. 16

    A.  Plaintiffs Do Not Have Standing To Bring A Negligent
        Misrepresentation Claim Against Deloitte ............................................. 17

    B.  Plaintiffs Have Not Alleged The Elements Of A Negligent
        Misrepresentation Claim With The Requisite Particularity ................... 19

V.  PLAINTIFFS' CLAIM FOR VIOLATION OF CALIFORNIA
    SECURITIES LAWS SHOULD BE DISMISSED ................................................... 20

    A.  Plaintiffs Cannot Allege That Deloitte Was A "Seller" Of WaMu's
        Notes, As Required By Corporations Code Section 25400 ................... 20

B.    Plaintiffs Do Not Have Standing To Bring Claims Under Corporations Code Section 25403 ................................................................ 21

VI.    CONCLUSION............................................................................................. 22

DELOITTE & TOUCHE LLP'S
MOTION TO DISMISS [DT-5]
LEAD CASE NO. C09-664 MJP

SUMMIT LAW GROUP PLLC

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Elec. Pension Fund v. Adecco S.A.,*
    434 F. Supp. 2d 815 (S.D. Cal. 2006)................................................................................7

*Am. High-Income Trust v. AlliedSignal,*
    329 F. Supp. 2d 534 (S.D.N.Y. 2004)..............................................................................14

*Anderson v. Deloitte & Touche LLP,*
    56 Cal. App. 4th 1468 (1997) ....................................................................................11, 13

*Apollo Capital Fund LLC v. Roth Capital Partners LLC,*
    158 Cal. App. 4th 226 (2007) .........................................................................................21

*B.L.M. v. Sabo & Deitsch,*
    55 Cal. App. 4th 823 (1997) ...........................................................................................17

*Baldwin v. Am. Home Mortg. Serv'g, Inc.,*
    No. Civ. S-09-0931-LKK-GGH, 2010 U.S. Dist. LEXIS 5671
    (E.D. Cal. Jan. 5, 2010)......................................................................................................6

*Bily v. Arthur Young & Co.,*
    3 Cal. 4th 370 (1992).................................................................................................*passim*

*Cadlo v. Owens-Illinois, Inc.,*
    125 Cal. App. 4th 513 (2004) .........................................................................6, 16, 19, 20

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) .............................................................................................6

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.,*
    454 F.3d 1168 (10th Cir. 2006) ....................................................................................9, 11

*DiLeo v. Ernst & Young,*
    901 F.2d 624 (7th Cir. 1990) ...........................................................................................12

*Dsam Global Value Fund v. Altris Software,*
    288 F.3d 385 (9th Cir. 2002) ...........................................................................................12

*Ellis v. Grant Thornton LLP,*
    530 F.3d 280 (4th Cir. 2008) ...........................................................................................18

*Eschelman v. Orthoclear Holdings, inc.,*
    No. C 07-1429 JSW, 2008 U.S. Dist. LEXIS 6826 (N.D. Cal. Jan. 18, 2008)....................16

*Fidel v. Farley,*
    392 F.3d 220 (6th Cir. 2004) ...........................................................................................14

*Friedman v. Merck & Co.,*
    107 Cal. App. 4th 454 (2003) ....................................................................................11, 19

*Goldrich v. Natural Y Surgical Specialties, Inc.*,
   25 Cal. App. 4th 772 (1994) ................................................................. 6

*Goodman Life Income Trust v. Jabil Circuit, Inc.*,
   595 F. Supp. 2d 1253 (M.D. Fla. 2009) ............................................... 10

*Hutson v. Am. Home Mortgage Serv'g, Inc.*,
   No. C 09-1951 PJH, 2009 U.S. Dist. LEXIS 96764 (N.D. Cal. Oct. 16, 2009) ................. 17

*In re Cardinal Inc. Health Sec. Litig.*,
   426 F. Supp. 2d 688 (S.D. Ohio 2006) ................................................ 10

*In re Delmarva Sec. Litig.*,
   794 F. Supp. 1293 (D. Del. 1992) ...................................................... 19

*In re Doral Fin. Corp. Sec. Litig.*,
   563 F. Supp. 2d 461 (S.D.N.Y. 2008) ................................................. 13

*In re Downey Sec. Litig.*,
   No. CV 08-3261-JFW, 2009 U.S. Dist. LEXIS 83443
   (C.D. Cal. Aug. 21, 2009) ................................................................... 7

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ........................................................... 3, 9

*In re ICN Pharms., Inc. Sec. Litig.*,
   299 F. Supp. 2d 1055 (C.D. Cal. 2004) ................................................ 7

*In re IKON Office Solutions*,
   277 F.3d 658 (3d Cir. 2002) ............................................................. 10

*In re In-Store Advertising Sec. Litig.*,
   878 F. Supp. 646 (S.D.N.Y. 1995) ................................................. 12, 13

*In re Livent, Inc. Sec. Litig.*,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999) ................................................. 14

*In re Marsh & McLennan Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ............................................. 5, 14

*In re SmarTalk Teleservices Inc. Sec. Litig.*,
   124 F. Supp. 2d 505 (S.D. Ohio 2000) ........................................... 11, 12

*In re Stac Elecs. Sec. Litig.*,
   89 F. 3d 1399 (9th Cir. 1996) ........................................................... 7

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) .............................................. 13

*Indus. Indem. Co. v. Touche Ross & Co.*,
   13 Cal. App. 4th 1086 (1993) .......................................................... 18

*Kamen v. Lindly*,
   94 Cal. App. 4th 197 (2001) ....................................................... 20, 21

*Kelley v. Rambus,*
No. C 07-1238 JF, 2008 U.S. Dist. LEXIS 100319 (N.D. Cal. Dec. 9, 2008) ................ 9, 10

*Kenney v. Deloitte, Haskins & Sells,*
No. C 91-0590 BAC, 1992 U.S. Dist. LEXIS 14600 (N.D. Cal. Sept. 1, 1992) ................. 12

*Laron, Inc. v. Constr. Res. Servs., LLC,*
No. CV-07-0151-PCT, 2007 U.S. Dist. LEXIS 48046 (D. Ariz. July 2, 2007) .................... 8

*Lorenz v. Sauer,*
807 F.2d 1509 (9th Cir. 1987) ........................................................................................... 1

*Miller v. Allstate Ins. Co.,*
489 F. Supp. 2d 1133 (S.D. Cal. 2007) ............................................................................. 17

*Mirkin v. Wasserman,*
5 Cal. 4th 1082 (1993) ...................................................................................................... 15

*Moore v. Kayport Package Express, Inc.,*
885 F.2d 531 (9th Cir. 1989) .............................................................................................. 6

*Morfin v. Accredited Home Lenders, Inc.,*
No. 09cv792-WQH, 2010 U.S. Dist. LEXIS 6831 (S.D. Cal. Jan. 26, 2010) ................... 1, 5

*Murphy v. BDO Seidman, LLP,*
113 Cal. App. 4th 687 (2003) ...................................................................................... 18, 21

*Neubronner v. Milken,*
6 F.3d 666 (9th Cir. 1993) ............................................................................................ 8, 16

*Oestreicher v. Alienware Corp.,*
544 F. Supp. 2d 964 (N.D. Cal. 2008) .............................................................................. 11

*Patriot Scientific Corp. v. Korodi,*
504 F. Supp. 2d 952 (S.D. Cal. 2007) ............................................................................... 17

*PR Diamonds, Inc. v. Chandler,*
364 F.3d 671 (6th Cir. 2004) ............................................................................................ 13

*Reiger v. PricewaterhouseCoopers, LLP,*
117 F. Supp. 2d 1003 (S.D. Cal. 2000) ....................................................................... 12, 13

*Scognamillo v. Credit Suisse First Boston LLC,*
No. C03-2061-TEH, 2005 U.S. Dist. LEXIS 20221 (N.D. Cal. Aug. 25, 2005) ........... 20, 21

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.,*
81 F.3d 606 (5th Cir. 1996) .............................................................................................. 19

*SEC v. Arthur Young & Co.,*
590 F.2d 785 (9th Cir. 1979) .............................................................................................. 9

*Small v. Fritz Cos., Inc.,*
30 Cal. 4th 167 (2003) .................................................................................................. 5, 15

*Swartz v. Deutsche Bank*,
  No. C03-1245-MJP, 2008 U.S. Dist. LEXIS 36139
  (W.D. Wash. May 2, 2008) ........................................................................... 6

*Swartz v. KPMG*,
  476 F.3d 756 (9th Cir. 2007) ...................................................................... 6

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................ 6, 7

*Vladimir v. Deloitte & Touche LLP*,
  No. 95 Civ. 10319, 1997 U.S. Dist. LEXIS 3823 (S.D.N.Y. Mar. 31, 1997) ...................... 14

## STATUTES

Cal. Corp. Code § 25400 .................................................................... 1, 2, 20, 21

Cal. Corp. Code § 25403 ........................................................................ 21

Cal. Corp. Code § 25404 ........................................................................ 21

Cal. Corp. Code § 25500 .................................................................... 20, 21

Cal. Corp. Code § 25504 ........................................................................ 21

Cal. Corp. Code § 25504.1 ...................................................................... 21

Cal. Corp. Code §§ 25500-25510 ............................................................ 21

## OTHER AUTHORITIES

Harold J. Marsh & Robert H. Volk, *Practice Under the California Securities
  Laws*, § 14.05[4] (2001) ........................................................................ 21

*Restatement* (*Second*) *of Torts*, § 552 ............................................ 17, 18

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1

Fed. R. Civ. P. 9(b) ........................................................................... *passim*

1  **I.    INTRODUCTION**

2          Tag-along plaintiffs Lou Solton and the City of San Buenaventura ("Plaintiffs") seek to

3  recoup purported losses on notes issued by Washington Mutual, Inc. ("WaMu" or "the

4  Company") from WaMu's current and former officers and directors, and its independent auditor,

5  Deloitte & Touche LLP ("Deloitte").  Unlike the class plaintiffs' claims against Deloitte, which

6  are asserted under Section 11 of the Securities Act of 1933, Plaintiffs here assert that Deloitte

7  committed fraud under California law.  Yet the Complaint offers not a single allegation meeting

8  the specificity requirements of Federal Rule of Civil Procedure 9(b) for pleading fraud.  Nor does

9  the Complaint establish that Deloitte may be held liable under California Corporations Code §

10  25400 *et seq.*  Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure

11  12(b)(6).

12          ***First,*** Plaintiffs' allegations of both intentional fraud and negligent misrepresentation do

13  not satisfy Rule 9(b)'s requirement that the circumstances constituting fraud be pled with

14  particularity.  *Morfin v. Accredited Home Lenders, Inc.*, No. 09cv792-WQH, 2010 U.S. Dist.

15  LEXIS 6831, at *21 (S.D. Cal. Jan. 26, 2010); *Lorenz v. Sauer*, 807 F.2d 1509, 1511-12 (9th Cir.

16  1987) ("Under California law, negligent misrepresentation is a species of actual fraud[.]").

17  Plaintiffs allege *no facts* to support their principal claim – that WaMu's allowance for loan losses

18  ("Allowance") was materially understated, and thus that WaMu's financial statements at years-

19  ended 2005, 2006 and 2007 were materially misstated.  Moreover, Plaintiffs offer nothing to

20  support their bare assertion that Deloitte committed fraud.  The generalities offered here

21  concerning purported violations of Generally Accepted Accounting Principles ("GAAP") are not

22  sufficient to sustain fraud claims against Deloitte.  And even if a GAAP violation by WaMu

23  were properly pled, Plaintiffs fail to allege any misstatement in Deloitte's opinions on WaMu's

24  financial statements (the only statements for which Deloitte may be held liable), or any facts

25  establishing that Deloitte acted with fraudulent intent.  Nor do Plaintiffs plead actual and

26  detrimental reliance on Deloitte's opinions, as required under California law.

27          ***Second,*** Plaintiffs do not have standing to bring a negligent misrepresentation claim

28  against Deloitte.  The California Supreme Court's ruling in *Bily v. Arthur Young & Co.*, 3 Cal.

1  4th 370 (1992) precludes such claims against an auditor unless its opinion is furnished to a

2  "limited group" in connection with a particular transaction. *Id.* at 392. Audit opinions rendered

3  for general corporate purposes, such as those rendered here by Deloitte, do not confer standing

4  on investors like Plaintiffs. Indeed, the Complaint makes no allegation that Deloitte knew of

5  Plaintiffs' trading in WaMu securities, or that Deloitte understood or intended that its opinions

6  influence their trading.

7      ***Third***, Plaintiffs' claim under California Corporations Code § 25400 *et seq.* fails because

8  the statute does not apply to an auditor like Deloitte, who neither sold nor offered to sell WaMu

9  securities.

10  **II.     THE COMPLAINT'S ALLEGATIONS**

11      **A.     WaMu's Allowance For Loan And Lease Losses**

12      Plaintiffs claim that Deloitte colluded with WaMu's officers and directors to mislead

13  purchasers of WaMu securities by understating the Allowances in WaMu's audited year-end

14  2005, 2006 and 2007 financial statements.[1] Under GAAP, an entity must recognize a loan loss

15  provision – *i.e.*, add to its Allowance and take a corresponding charge against income – when a

16  receivable is impaired based on events and conditions existing at the balance sheet date. RJN

17  Ex. 1 at 1, 4; Compl. ¶ 138. The GAAP authorities governing calculation of the Allowance,

18  FAS Nos. 5 and 114, allow a provision to be "booked" only when information available prior to

19  issuance of the financial statements indicates that a loss has been "incurred"; *i.e.*, is both

20  "probable" and "reasonably estimable" based on past events and conditions existing at the date

21  of the financial statements. RJN Ex. 2 at ¶ 8; RJN Ex. 3 at 12 (Q.14); Compl. ¶ 141. GAAP

22  does not permit an Allowance to be booked in anticipation of possible or expected future losses.

23  RJN Ex. 3 at 8 (Overview).

24      WaMu's Allowances represented "management's estimate of incurred credit losses

25  inherent in the Company's loan and lease portfolios as of the balance sheet date." Compl. ¶ 138

26  (quoting 2006 Form 10-K). A significant degree of judgment is involved in estimating the

27

28  [1] *See, e.g.,* Compl. ¶¶ 2, 149, 327-28, 352-53, 356-57, 370-71, 374-75 (setting forth conclusory allegations of collusive fraud between Deloitte and WaMu); Compl. ¶¶ 228-63 (describing Defendants' alleged material understatement of WaMu's Allowance).

1    Allowance.  *Id.*; RJN Ex. 4 at 21-22; RJN Ex. 5 at 24; *accord In re GlenFed, Inc. Sec. Litig.*, 42

2    F.3d 1541, 1549 (9th Cir. 1994) (observing that "the valuation of assets and the setting of loan

3    loss reserves are based on flexible accounting concepts, which, when applied, do not always (or

4    perhaps ever) yield a single correct figure").  The Allowance thus represents management's

5    estimate of losses already incurred as of the balance sheet date but not yet manifest in the

6    portfolio – and the auditor's job is to perform GAAS-compliant procedures that enable the

7    auditor to express an opinion on the reasonableness of management's estimate.  RJN Ex. 7 (AU

8    § 110.02).

9            **B.      WaMu's Allowance Responded To And Reflected Market Conditions**

10           Plaintiffs' only allegation with respect to the financial statements, and therefore, as to

11   Deloitte, is that Defendants colluded to materially understate WaMu's Allowances at years-end

12   2005, 2006 and 2007.  Compl. ¶¶ 149, 156.  Plaintiffs allege that "WaMu failed to properly

13   account for and disclose its Allowances," "failed to properly account for the material increases

14   in risk associated with its lending practices" and "conceal[ed] the negative impact that the

15   deteriorating credit quality of the Company's home mortgage loans was having on the

16   Company's financial condition[.]"  *Id.* ¶ 140.  The Complaint offers no facts to support

17   Plaintiffs' assertion that the Allowance – based on then-contemporaneous factors like loan loss

18   experience, default rates, borrowers' credit profiles, housing prices, interest rates, and

19   prevailing economic conditions – was materially understated at the relevant balance sheet dates.

20   *Id.* ¶¶ 251-55.

21           Plaintiffs simply repeat WaMu's public statements relating to its Allowance (Compl.

22   ¶¶ 230-42) and observe that starting in the third quarter of 2007 and proceeding into 2008,

23   WaMu – like virtually all participants in the financial service sector – significantly increased its

24   Allowance in response to unfolding market events (*id.* ¶¶ 243-50, 260).  Plaintiffs then

25   conclusorily assert that "[o]f course, these statements were false and misleading because, from

26   at least 2005, WaMu did not account for its loans in accordance with GAAP and SEC

27   regulations."  *Id.* ¶ 251.  Plaintiffs allege no facts showing that WaMu failed to consider

28   relevant credit risks, that increases to the Allowances should have been taken earlier, or that

1  such increases even could have been justified under the governing accounting literature.  *Id.* ¶¶

2  252, 258-59.

3          Significantly, Plaintiffs allege no facts to support their conclusory allegation that Deloitte

4  colluded with anyone; such assertions are completely devoid of factual content.

5          **C.      Deloitte's Limited Role With Respect To WaMu's Financial Statements**

6          Deloitte was WaMu's independent auditor for the 2005, 2006 and 2007 year-end audits.

7  Compl. ¶¶ 35, 313.  Generally Accepted Auditing Standards ("GAAS") required Deloitte to use

8  due professional care in planning and conducting its audits, and to obtain a reasonable basis for

9  its opinions.  RJN Ex. 6 (AU § 150.02).  Under GAAS, "[t]he financial statements are

10  management's responsibility."  RJN Ex. 7 (AU § 110.03).  Thus, management is responsible for

11  properly booking the entity's transactions and related assets, liabilities, and equity – including

12  the company's Allowance – as these matters are "within the direct knowledge and control of

13  management."  *Id.*

14          An auditor only reviews the financial statements and issues an opinion on whether they

15  "fairly represent the financial status of the audited entity" under GAAP and are "free of material

16  misstatement."  RJN Ex. 7 (AU § 110.02); *Bily*, 3 Cal. 4th at 380.  Deloitte was responsible for

17  obtaining "reasonable assurance" for its opinions by testing only a sample of the client's

18  accounting records.  RJN Ex. 7 (AU § 110.02); Ex. 9 (AU § 326.22) (auditor in most cases must

19  rely on evidence that is persuasive rather than convincing); *see also Bily*, 3 Cal. 4th at 380.

20  Indeed, "the auditor is not an insurer and his or her report does not constitute a guarantee."  RJN

21  Ex. 8 (AU § 230.13) (stating that the subsequent discovery of a material misstatement in

22  financial statement does not, in and of itself, evidence (a) failure to obtain reasonable assurance,

23  (b) inadequate planning, performance, or judgment, (c) the absence of due professional care, or

24  (d) a failure to comply with PCAOB standards).  Thus, "even a properly planned and performed

25  audit may not detect a material misstatement resulting from fraud."  RJN Ex. 10 (AU § 316.12).

26          **D.      Alleged False Statements Attributed to Deloitte**

27          The Complaint is hopelessly vague and internally inconsistent with respect to the Deloitte

28  statements alleged to be false.  *Compare*, *e.g.*, Compl. ¶¶ 149, 313 (discussing only Deloitte's

1  2005 and 2006 audit opinions) *with* Compl. ¶¶ 163, 274, 315, 337 (discussing 2007 work

2  performed by Deloitte) *with* Compl. ¶¶ 35, 106, 156, 228, 314, 328, 350, 365 (tangentially

3  discussing Deloitte's internal controls opinions).  This lack of clarity alone is grounds for

4  dismissal of the Complaint.  *See*, *e.g.*, 5/15/09 Order (Dkt. No. 277) at 8.

5          Interpreting the Complaint broadly, Plaintiffs appear to challenge the audit opinions

6  issued by Deloitte in connection with WaMu's Forms 10-K for 2005, 2006 and 2007.  Compl.

7  ¶ 315.  While unclear, it appears Plaintiffs may also challenge Deloitte's opinions on

8  management's assessment of WaMu's internal controls for the years ending 2005, 2006 and

9  2007.  Compl. ¶¶ 163, 274, 328.  Each allegation is wholly conclusory.  The Complaint contains

10  other allegations regarding WaMu's supposedly improper risk management, its purported efforts

11  to force appraisers to inflate property values, and its alleged decision to loosen underwriting

12  standards.  Comp. ¶¶ 83-133.  However, there is no allegation that any allegedly false statement

13  concerning these issues is attributable to Deloitte – or could be.  *See infra*, pp. 8-11.

14          The vast majority of the statements that Plaintiffs identify – relating to WaMu's risk

15  management efforts, appraisal practices, and underwriting standards – are not attributable to

16  Deloitte.  Compl. ¶¶ 83-133.  These statements were set forth in the MD&A sections of the Form

17  10-Ks at issue, which are not part of the audited financial statements.  RJN Ex. 4 at 56, 57, 63;

18  RJN Ex. 5 at 47, 54; RJN Ex. 11 at 36; RJN Ex. 12 at 51; *In re Marsh & McLennan Sec. Litig.*,

19  501 F. Supp. 2d 452, 478 (S.D.N.Y. 2006) (noting alleged misrepresentations in unaudited

20  sections of 10-K filings, including MD&A, are not attributable to auditor).  Such statements

21  cannot support a claim of fraud against Deloitte.

22  **III.  PLAINTIFFS' CLAIM FOR FRAUD SHOULD BE DISMISSED**

23          **A.  Plaintiffs' Fraud Claim Must Satisfy The Heightened Pleading Standard Of**
24              **Rule 9(b)**

25          Common law fraud claims must be pled in conformity with Rule 9(b).  *Morfin*, 2010 U.S.

26  Dist. LEXIS 6831, at *23 (holding Rule 9(b) applies to common law fraud claims); *Small v. Fritz*

27  *Cos., Inc.*, 30 Cal. 4th 167, 184 (2003) ("[I]n California, fraud must be pled specifically[.]").

28  "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

1    stated with particularity" under Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104

2    (9th Cir. 2003) (internal quotation and citation omitted).  Plaintiffs "must set forth what is false

3    or misleading about a statement, and why it is false."  *Id.* at 1106 (allegations "must be

4    accompanied by 'the who, what, when, where, and how' of the misconduct charged") (quoting

5    *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  "[M]ere conclusory allegations of fraud

6    are insufficient."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

7         The Ninth Circuit has repeatedly warned plaintiffs "to refrain from general conclusory

8    allegations against 'the defendants' in the aggregate 'without any stated factual basis.'"  *Swartz*

9    *v. Deutsche Bank*, No. C03-1245-MJP, 2008 U.S. Dist. LEXIS 36139, at *39 (W.D. Wash. May

10   2, 2008) (Pechman, J.) (quoting *Swartz v. KPMG*, 476 F.3d 756, 765 (9th Cir. 2007)) (allegations

11   lacking in particularity "fall far short of the requirements of FRCP 9(b)").  Fraud actions are

12   disfavored and subject to strict pleading requirements under California law as well.  *Cadlo v.*

13   *Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004); *Goldrich v. Natural Y Surgical*

14   *Specialties, Inc.*, 25 Cal. App. 4th 772, 782 (1994) (holding general and conclusory allegations of

15   fraud will not suffice).  Thus, Plaintiffs must satisfy Rule 9(b) with respect to each of the

16   following elements of their fraud claim against Deloitte: (1) misrepresentation (a false

17   representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to defraud (to

18   induce reliance); (4) justifiable reliance; and (5) resulting damage.  *Baldwin v. Am. Home Mortg.*

19   *Serv'g, Inc.*, No. Civ. S-09-0931-LKK-GGH, 2010 U.S. Dist. LEXIS 5671, at *20 (E.D. Cal.

20   Jan. 5, 2010) (dismissing cause of action for fraud under California law).  Plaintiffs have failed

21   to meet this burden.  They have failed to allege facts sufficient to establish falsity, intent to

22   defraud, or reliance.

> **B.    Plaintiffs Fail To Allege Any Circumstances Of Deloitte's Alleged Fraud
> With The Requisite Particularity Under Rule 9(b)**

25        Plaintiffs claim Deloitte deliberately deceived WaMu investors by issuing false audit and

26   internal controls opinions in connection with WaMu's year-end 2005, 2006 and 2007 financial

27   statements.  Compl. ¶¶ 327-28.  Plaintiffs adopt the same theory as the Class Action Complaint –

28   that WaMu's Allowances were understated, and that Deloitte signed off on false financial

statements. Compl. ¶¶ 228-69. While such allegations may have been sufficient to sustain a

Section 11 claim against Deloitte, they cannot support a claim that Deloitte committed fraud.

Under Rule 9(b) Plaintiffs are required – but have failed – to set forth specific factual allegations

establishing that Deloitte issued fraudulent opinions. *See Vess*, 317 F.3d at 1106.

### 1.    Plaintiffs Fail To Allege Any Particularized Facts Showing A False Statement In WaMu's 2005, 2006 Or 2007 Financial Statements

As one district court recently observed:

> [A] complaint alleging fraud based on understated reserves must include details
> about when and to what level the [loans] should have been written down, when
> and to what level the allowance should have been changed, why the allowance
> made by the corporation was unreasonable in light of the bad debt experienced,
> and how many accounts ultimately were uncollectible.

*Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 823 (S.D. Cal. 2006) (internal

quotation omitted) (applying Rule 9(b) to falsity element of Section 10(b) claim); *see also In re

Stac Elecs. Sec. Litig.*, 89 F. 3d 1399, 1409 (9th Cir. 1996) (finding allegations insufficient to

satisfy Rule 9(b) absent "precise allegations explaining how the alleged misstatements were

misleading or untrue when made"); *In re ICN Pharms., Inc. Sec. Litig.*, 299 F. Supp. 2d 1055,

1065 (C.D. Cal. 2004) ("[A] delinquent write-down of the impaired assets, without anything

more, does not state a claim of securities fraud, stating at best a bad business decision.").

Plaintiffs' allegations fall far short of this standard. The financial statements at issue

have never been restated, and Plaintiffs make no attempt to allege the amount by which the

Allowance was purportedly understated at years-end 2005, 2006 or 2007. Plaintiffs do not

identify a single confidential witness, internal report, memorandum, or anything else even

remotely supporting the claim that WaMu failed to account for increased credit risks in

calculating the Allowance. *See, e.g.*, Compl. ¶¶ 140, 149, 156. The Complaint lacks any

specific facts explaining what Plaintiffs believe the reported financial statements should have

shown, or why – and in what specific respects they were materially misstated. *Id.*; *see also In

re Downey Sec. Litig.*, No. CV 08-3261-JFW, 2009 U.S. Dist. LEXIS 83443, at *14-15 (C.D.

Cal. Aug. 21, 2009) ("Plaintiff continues to simply assume that Downey ignored the financial

metrics in setting its reserves" and "failed to allege any facts demonstrating that anything other

1    than changing conditions at Downey and in the market dictated the increases in Downey's

2    reserves in the third quarter of 2007").

3            Nor can Plaintiffs turn this Court's ruling on the Class Action Complaint's Section 11

4    claims into a basis for asserting that Deloitte issued fraudulent opinions in connection with the

5    financial statements at issue here.  First, the Court has never analyzed any pleading that

6    questions the accuracy of WaMu's 2007 financial statements.  *See* Order dated 5/15/09 (Dkt No.

7    277); Order dated 10/27/2009 (Dkt No. 381).  Plaintiffs' Complaint provides no facts at all upon

8    which this Court could conclude that WaMu's 2007 Allowance was understated – let alone, that

9    Deloitte fraudulently issued an audit opinion on the year-end 2007 financial statements.  *See*,

10   *e.g.*, Compl ¶¶ 156, 251-55, 313-37.  Second, the Complaint at issue here is a separate pleading

11   arising under California law, which the Court must consider on its own.  Even with respect to

12   WaMu's 2005 and 2006 financial statements, this Court has never assessed a claim of fraud

13   against Deloitte – because none was advanced in the Class Action Complaint.  *See* Order dated

14   5/15/09 (Dkt No. 277); Order dated 10/27/2009 (Dkt No. 381).  As set forth below, a plaintiff

15   must allege far more than a GAAP violation to meet its burden under Rule 9(b) of establishing

16   auditor fraud (*infra* pp. 10-11).  Third, Plaintiffs' boilerplate statement about the factual basis for

17   the Complaint's fraud allegations (Compl. at 1) does not plead with particularity the facts upon

18   which Plaintiffs' alleged "information and belief" are based.  *Neubronner v. Milken*, 6 F.3d 666,

19   672 (9th Cir. 1993) (holding allegations of fraud made on information and belief must state the

20   factual basis for that belief under Rule 9(b)); *Laron, Inc. v. Constr. Res. Servs., LLC*, No. CV-07-

21   0151-PCT, 2007 U.S. Dist. LEXIS 48046, at *14-16 (D. Ariz. July 2, 2007) (same).  As such,

22   this statement does not begin to compensate for the Complaint's obvious pleading deficiencies

23   under Rule 9(b).

24           **2.    Plaintiffs Fail To Plead That Deloitte's Audit Opinions Contained A
                     False Or Misleading Statement**

25

26           Plaintiffs claim that Deloitte's opinions in WaMu's Form 10-Ks for the years ending

27   2005, 2006 and 2007 were false because (1) WaMu's financial statements failed to comply with

28   GAAP (Compl. ¶¶ 331, 337); and (2) Deloitte violated GAAS by failing to detect the material

understatement of WaMu's Allowance or (unspecified) weaknesses in WaMu's internal controls (*id.* ¶ 328).  Contrary to Plaintiffs' bald assertion (*id.* ¶ 337), however, an accountant does not "'certify' a company's financial statements in the sense that they 'guarantee' or 'insure' them." *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006); *SEC v. Arthur Young & Co.*, 590 F.2d 785, 788 (9th Cir. 1979) ("an accountant is not a guarantor of the reports he prepares"); RJN Ex. 8 (AU § 230.13); Ex. 7 (AU § 110) (auditor's responsibility is confined to the expression of his or her opinion on the financial statements).  Nor does an accountant, "by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein." *Deephaven*, 454 F.3d at 1174.

As noted above, WaMu's management was responsible for properly estimating the Allowance (Compl. ¶ 138) – an estimate that itself was "based on flexible accounting concepts, which, when applied, do not always (or perhaps ever) yield a single correct figure." *GlenFed*, 42 F.3d at 1549.  Deloitte was obligated only to obtain "reasonable assurance" that management's Allowance fell within a reasonable range of acceptable amounts (RJN Ex. 7 (AU § 110.02)), an assessment involving "a high degree of professional skill and judgment" based upon the information obtained by Deloitte during its audits.  *Bily*, 3 Cal. 4th at 380.

As a result, even if Plaintiffs could sufficiently plead that WaMu's financial statements were materially inaccurate, a GAAP violation alone cannot establish the falsity of an auditor's opinion on those statements.  *Kelley v. Rambus*, No. C 07-1238 JF, 2008 U.S. Dist. LEXIS 100319, at *42 (N.D. Cal. Dec. 9, 2008) (finding allegations of false auditor opinions insufficient in dismissing Section 18(a) claim under Rule 9(b)).  To avoid dismissal of their fraud claims under Rule 9(b), Plaintiffs must allege "sufficiently particularized facts" showing that Deloitte provided its opinions "without a genuine belief or basis" – *i.e.*, Deloitte (1) did not believe its audit opinions were true; or (2) did not have a reasonable basis for its audit opinions because it did not plan and perform its audits in accordance with GAAS.  *Kelley*, 2008 U.S. Dist. LEXIS 100319, at *40 (finding no misstatement where plaintiffs failed to allege auditor's disbelief in opinions or provide particular facts suggesting GAAS violation); *Deephaven*, 454 F.3d at 1176 (affirming dismissal of Section 18(a) claim for failure to allege the auditor did not actually form

1  its opinion based on its audit or "did not have a reasonable basis for its opinion" because the

2  audit was not GAAS-compliant).  Plaintiffs have failed to do so.

3        First, aside from vague allegations of collusive fraud (*see supra* n.1), Plaintiffs make no

4  effort to allege any facts even remotely suggesting that Deloitte disbelieved its own opinions

5  when issuing them.  Compl. ¶¶ 313-37.  Nor does the Complaint offer specific facts to support

6  the claim that Deloitte "disregarded" WaMu's alleged misconduct.  *Id.* ¶ 327.  Nowhere do

7  Plaintiffs allege that Deloitte discovered the alleged misconduct in the course of its audits, nor

8  do they point to any facts suggesting that Deloitte had knowledge of such misconduct.  *Id.*

9  ¶¶ 313-37.

10        Second, Plaintiffs' naked claims about the supposed understatement of WaMu's

11  Allowance at years-end 2005-2007, even if taken as true, cannot establish that Deloitte's audit

12  and internal controls opinions for those years were fraudulent.  *Deephaven*, 454 F.3d at 1176-77

13  (holding, in Section 18(a) case, that allegations of GAAP violations are insufficient under Rule

14  9(b) to render auditor's opinion materially false or misleading); *Goodman Life Income Trust v.*

15  *Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1281-82 (M.D. Fla. 2009) (same); *Kelley*, 2008 U.S.

16  Dist. LEXIS 100319, at *40 (same); *see also In re IKON Office Solutions Sec. Litig.*, 277 F.3d

17  658, 673 (3d Cir. 2002) ("[E]ven an audit conducted in strict accordance with professional

18  standards . . . may result in a failure to a detect a material omission or misstatement.").

19        Finally, Plaintiffs advance only generalized allegations that Deloitte violated GAAS –

20  doing nothing more than reciting various auditing standards and asserting that Deloitte violated

21  each one of them.  Compl. ¶¶ 323-36.  But for Plaintiffs' fraud claim to satisfy Rule 9(b), it must

22  set forth particularized facts showing *how* and *why* Deloitte's practices amounted to a GAAS

23  violation.  *Kelley*, 2008 U.S. Dist. LEXIS 100319, at *42 (finding failure to plead GAAS

24  violation where plaintiff identified no factual "link" between GAAP violation and "facts

25  available during the audit that could have alerted [auditor] to the inaccuracies").  Plaintiffs'

26  conclusory assertions that Deloitte violated GAAS clearly do not meet this standard.  *In re*

27  *Cardinal Inc. Health Sec. Litig.*, 426 F. Supp. 2d 688, 778 (S.D. Ohio 2006) ("Plaintiffs have

28  done no more than list these GAAS standards, failing to specify, who, where, when, or how

1    E&Y actually violated them.") (dismissing Section 10(b) claim based on allegedly false audit

2    opinion); *In re SmarTalk Teleservices Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 518 (S.D. Ohio

3    2000) ("At most, Plaintiffs' allegations amount to a speculative attempt to connect generally

4    stated GAAS violations with information discovered after the fact, in an attempt to create the

5    appearance of recklessness.  This attempt fails.").

6          In fact, the Complaint is silent with respect to the audit work that Deloitte actually

7    performed.  Plaintiffs offer no basis for the conclusion that Deloitte's work was deficient, such

8    that its audit opinion was false, let alone fraudulent.  Plaintiffs instead offer boilerplate

9    allegations that WaMu's financial statements did not comply with GAAP – and then leap to the

10    conclusion that Deloitte must have violated GAAS.  Compl. ¶¶ 329-32, 337.  This is insufficient

11    to satisfy Rule 9(b)'s particularity requirement.  *See Deephaven*, 454 F.3d at 1175 ("The use of

12    the term 'reasonable' connotes that an audit cannot be expected to completely eliminate the

13    possibility that a material misstatement will exist in the financial statements.").

14
15       **C.**    **Plaintiffs' Boilerplate Allegations Of Deloitte's Fraudulent Intent Are Insufficient to Support A Fraud Claim**

16          A plaintiff asserting a common law claim of fraud must allege either "the auditor's actual

17    knowledge" that its audit opinion was false, or that the auditor had "no belief in the truth of the

18    statement, and [made] it recklessly, without knowing whether it is true or false. . . ."  *See Bily*, 3

19    Cal. 4th at 415; *Anderson v. Deloitte & Touche LLP*, 56 Cal. App. 4th 1468, 1476 (1997)

20    (affirming summary judgment on fraud claim where plaintiffs presented no evidence of auditor's

21    "disbelief in the truth of the statement").  Even an allegation of an "'extreme deviation' from

22    AICPA standards" cannot satisfy this essential element.  *Id.*; *see also Friedman v. Merck & Co.*,

23    107 Cal. App. 4th 454, 475-76 (2003) (holding statement made "without any reasonable ground

24    for believing it to be true" is only negligent misrepresentation).

25          Under Rule 9(b), boilerplate allegations of culpability cannot satisfy the "intent to

26    defraud" element.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal.

27    2008) (dismissing fraud claims, and holding that "nothing in the Federal Rules of Civil

28    Procedure relieves a plaintiff of the obligation to set forth facts from which an inference of

scienter could be drawn"); *Kenney v. Deloitte, Haskins & Sells*, No. C 91-0590 BAC, 1992 U.S.
Dist. LEXIS 14600, at *20 (N.D. Cal. Sept. 1, 1992) (dismissing fraud claims, and finding that
allegations of scienter were "conclusory and [did] not meet the standards of Rule 9(b)").  In
rejecting fraud allegations against an auditor under Rule 9(b), the Seventh Circuit Court of
Appeals reasoned:

> The complaint does not allege that [the auditor] had anything to gain from any
> fraud by [the company.] . . . [The auditor's] partners shared none of the gain from
> any fraud and were exposed to a large fraction of the loss.  It would have been
> irrational for any of them to have joined cause with [the company].  People
> sometimes act irrationally, but indulging ready inferences of irrationality would
> too easily allow the inference that ordinary business reverses are fraud.  One who
> believes that another has behaved irrationally has to make a strong case. . . .
> Boilerplate of this kind does not suffice.

*DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990); *accord Kenney*, 1992 U.S. Dist.
LEXIS 14600, at *18-19; *In re In-Store Advertising Sec. Litig.*, 878 F. Supp. 646, 649 (S.D.N.Y.
1995) (dismissing common law fraud claim under Rule 9(b), and finding that conclusory
statements regarding auditor's "purported reckless indifference" are inadequate) (applying New
York law).

    Indeed, courts have repeatedly imposed a heavier burden on plaintiffs attempting to plead
securities fraud against an outside auditor precisely because of "the lack of a rational economic
incentive for an independent accountant to participate in fraud" and "the complex professional
judgment required to perform an audit."  *Reiger v. PriceWaterhouse Coopers LLP*, 117 F. Supp.
2d 1003, 1008, 1011 (S.D. Cal. 2000) (pleading recklessness against an outside auditor is
"exceedingly difficult" and requires allegations that "the accounting practices were so deficient
that the audit amounted to no audit at all, or an egregious refusal to see the obvious") (internal
citation omitted); *see also Dsam Global Value Fund v. Altris Software,* 288 F.3d 385, 390 (9th
Cir. 2002) (finding scienter allegations insufficient where allegations contained no facts showing
that an outside auditor's "accounting practices were so deficient that the audit amounted to no
audit at all[.]"); *SmarTalk*, 124 F. Supp. 2d at 514 (requiring higher standard of scienter for
outside auditors in context of securities fraud; complaint must allege "specific facts showing that

1    the deficiencies in the audit were so severe that they strongly suggest that the auditor must have

2    been aware of the corporation's fraud").

3          Here, the Complaint is devoid of any factual content suggesting that Deloitte fraudulently

4    issued its audit opinions.  To be sure, Plaintiffs recite various GAAS standards and allege that

5    Deloitte departed from those standards during its 2005, 2006 and 2007 year-end audits (Compl.

6    ¶¶ 329-32) – but the simple recitation of GAAS standards coupled with conclusory allegations

7    that the auditor departed from those standards is not sufficient to plead fraudulent intent.

8    *Anderson*, 56 Cal. App. 4th at 1476; *In-Store Advertising*, 878 F. Supp. at 648 (holding

9    allegations that "merely catalog the alleged deviations from the relevant professional standards"

10   are insufficient).  These boilerplate statements do not establish that Deloitte issued its opinions

11   with "no belief in [their] truth."  *See Bily*, 3 Cal. 4th at 415.

12         Plaintiffs suggest Deloitte "must have known" about WaMu's misconduct because

13   Deloitte served as WaMu's auditor for years, was "intimately familiar" with WaMu's business,

14   and had "access to information" concerning WaMu.  Compl. ¶ 314.  Courts routinely find such

15   allegations insufficient to plead fraudulent intent in securities fraud cases.  *PR Diamonds, Inc. v.*

16   *Chandler*, 364 F.3d 671, 695-96 (6th Cir. 2004) (auditors' presence at corporate headquarters

17   and access to information are insufficient to raise an inference of scienter); *In re Doral Fin.*

18   *Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (allegation of auditor's "limitless

19   access" and knowledge of business is a "conclusory allegation" and did not "show[] anything

20   more than that PwC was [the company's] auditor"); *In re Van Wagoner Funds, Inc. Sec. Litig.*,

21   382 F. Supp. 2d 1173, 1186 (N.D. Cal. 2004) ("[S]imply because an accountant had access to

22   documents that revealed the company's fraud when it conducted its audit, it does not strongly

23   compel an inference of intentional or deliberately reckless conduct as opposed to ordinary

24   carelessness.").

25         Plaintiffs' boilerplate allegation that Deloitte engaged in fraudulent activity for financial

26   gain fares no better.  Compl. ¶ 35.  As numerous courts have observed, it is simply irrational to

27   assume that a major auditing firm would risk its reputation for the fees to be secured from one

28   audit client.  *Reiger*, 117 F. Supp. 2d at 1007.  The vague suggestion that Deloitte was financially

1  motivated to ignore alleged fraud at WaMu is patently insufficient to sustain Plaintiffs' pleading

2  burden. *See Am. High-Income Trust v. AlliedSignal*, 329 F. Supp. 2d 534, 545-46 (S.D.N.Y.

3  2004) (finding desire to earn professional fees or to maintain relationship insufficient to support

4  common law fraud claim under New York law).

5       Finally, Plaintiffs assert generally that various "audit risks" and "red flags" existed during

6  Deloitte's 2005, 2006 and 2007 audits, and that Deloitte's failure to perform unspecified audit

7  steps to address those "risks" was "knowing" or "reckless."  Compl. ¶¶ 320, 336.  However,

8  what Plaintiffs label as "red flags" are only generic risk factors. *Id.* ¶ 320 ("Deloitte recognized

9  the risk of nonpayment, especially of subprime loans"); ¶ 321 ("Deloitte recognized that

10 WaMu's management had a built-in incentive to inflate WaMu's financial condition and the

11 value of assets[.]").  These purported "red flags" cannot and do not satisfy Rule 9(b). *Marsh &*

12 *McLennan*, 501 F. Supp. 2d at 487 ("Merely labeling allegations as red flags, however, is

13 insufficient to make those allegations relevant to a defendant's scienter.").  Plaintiffs do not

14 identify any particular facts, documents, or disclosures that Deloitte allegedly observed during its

15 audits, which would have revealed the alleged fraud. *Fidel v. Farley*, 392 F.3d 220, 229 (6th Cir.

16 2004) (disregarding red flags when auditor not alleged to have been aware of them); *In re Livent,*

17 *Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 218 (S.D.N.Y. 1999) ("Even if [the auditor] should have

18 done more to attempt to uncover and disclose the alleged fraud, without factual allegations

19 tending to establish knowledge of those practices on [the auditor's] part, an auditor's failure to

20 do more is legally insufficient") (internal quotation and citation omitted).  Moreover, Plaintiffs

21 offer no particularized allegations that specific "red flags" required Deloitte to perform different

22 or additional procedures, and if so, what those procedures would have been. *Vladimir v. Deloitte*

23 *& Touche LLP*, No. 95 Civ. 10319, 1997 U.S. Dist. LEXIS 3823, at *26-28 (S.D.N.Y. Mar. 31,

24 1997) (holding "red flags" should be disregarded unless "tied to" a GAAS standard).

25       In short, the Complaint's boilerplate allegations do not satisfy Rule 9(b)'s pleading

26 requirements regarding the auditor's "state of mind" sufficient to avoid dismissal of Plaintiffs'

27 fraud claim. *See Bily*, 3 Cal. 4th at 415.

28

**D.    Plaintiffs Have Failed To Allege Actual Reliance On Alleged Misstatements**

Plaintiffs' Complaint also fails to plead actual reliance on any alleged misrepresentation by Deloitte.  Unlike the federal class action, which may benefit from a "fraud on the market" presumption, California law requires the plaintiff to allege actual reliance in order to avoid dismissal.  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1091 (1993) (upholding dismissal of misrepresentation claim against auditor for failure adequately to plead actual reliance).  While the Complaint generally asserts that Plaintiffs read unidentified financial statements of WaMu (Compl. ¶¶ 351, 366), such allegations are insufficient to plead actual reliance under Rule 9(b).

***Reliance on WaMu's Form 10-K for 2007.***  Plaintiffs' purported reliance on statements made in WaMu's 2007 Form 10-K cannot support Plaintiffs' fraud claim against Deloitte.  Compl. ¶¶ 337.  WaMu's 2007 Form 10-K was not filed with the SEC until February 29, 2008 (*id.* ¶ 294) – months after Plaintiffs purchased the notes at issue.  *Id.* ¶¶ 60, 69.  As such, Plaintiffs cannot plead actual reliance on the 2007 Form 10-K in connection with their purchase of the notes.  *See Mirkin*, 5 Cal. 4th at 1091.

To the extent Plaintiffs allege that they relied on the 2007 Form 10-K in "continuing to hold WaMu securities" (Compl. ¶ 353), they come nowhere close to making "a bona fide showing of actual reliance upon the misrepresentations" as required by California law.  *Small*, 30 Cal. 4th at 184 (requiring plaintiff who claims he continued to hold securities based on misrepresentations to allege actual and justifiable reliance with specificity).  A plaintiff's mere "assertion" of reliance is "insufficient."  *Id.* (holding "plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations").  For example, a plaintiff must allege that had he "read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place."  *Id.*  The Complaint alleges only that Plaintiffs read unspecified financial statements of WaMu at an unspecified time, and that they "would not have invested in or continued to hold the WaMu notes" had they known the purported truth.  Compl. ¶¶ 354.  This generalized pleading fails to make the *bona fide* showing of reliance necessary to sustain a fraud claim.  *Small*, 30 Cal.

1  4th at 184-85; *see also Eschelman v. Orthoclear Holdings, Inc.*, No. C 07-1429 JSW, 2008 U.S.

2  Dist. LEXIS 6826, at *21 (N.D. Cal. Jan. 18, 2008) (finding conclusory "after-purchase

3  allegations" do not support claim for intentional misrepresentation "because the Complaint fails

4  to allege facts demonstrating reliance").

5       ***Reliance on WaMu's Forms 10-K for 2005 and 2006.***  Allegations of reliance by

6  purchasers of a company's securities must establish a "close connection" between the auditor's

7  purported misstatement and the plaintiff's resulting action.  *Bily*, 3 Cal. 4th at 401.  *In Bily*, the

8  California Supreme Court looked behind the plaintiffs' hindsight assertions that the auditor's

9  report was the "sine qua non of their investments," finding instead that their "revisionist view of

10  the company's history, the audit, and their own investments, suggests something less than a

11  'close connection' between . . . [the] audit report and the loss of their invested funds."  *Id.*

12  (observing that "plaintiffs' litigation-focused attention is now exclusively on the auditor and its

13  report").

14       Here, Plaintiffs do not allege that they actually read Deloitte's audit and internal controls

15  opinions in WaMu's 2005 and 2006 Forms 10-K.  Nor do they allege any facts supporting the

16  hindsight claim that they relied on Deloitte's opinions in making their investment decisions.

17  *Neubronner*, 6 F.3d at 673 (dismissing misrepresentation claim under Rule 9(b) where plaintiff

18  failed to state "precisely when and where he obtained the false information"); *Cadlo*, 125 Cal.

19  App. 4th at 519 ("The mere assertion of 'reliance' is insufficient.  The plaintiff must allege the

20  specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual

21  reliance.").  Plaintiffs have not pled reliance with the particularity required under Rule 9(b), and

22  their fraud claim should be dismissed for this reason as well.

23 **IV.   PLAINTIFFS' CLAIM FOR NEGLIGENT MISREPRESENTATION SHOULD**
24 **       BE DISMISSED**

25       The California Supreme Court has established strict standing requirements for plaintiffs

26  seeking to bring a negligent misrepresentation claim against an independent auditor like Deloitte.

27  *Bily*, 3 Cal. 4th at 376.  Plaintiffs cannot satisfy those standing requirements.  Furthermore, their

28  cause of action for negligent misrepresentation is a form of fraud, and thus its elements must be

1  pled with particularity under Rule 9(b).  *See Hutson v. Am. Home Mortgage Serv'g, Inc.*, No. C

2  09-1951 PJH, 2009 U.S. Dist. LEXIS 96764, at *41 (N.D. Cal. Oct. 16, 2009) (dismissing

3  negligent misrepresentation claim for failure to satisfy Rule 9(b)); *Miller v. Allstate Ins. Co.*, 489

4  F. Supp. 2d 1133, 1139 (S.D. Cal. 2007) (holding "[c]laims for negligent misrepresentation must

5  meet the heightened pleading requirements" of Rule 9(b)); *Patriot Scientific Corp. v. Korodi*,

6  504 F. Supp. 2d 952, 965 (S.D. Cal. 2007) (the averments in support of a "negligent

7  misrepresentation claim are properly considered 'averments of fraud' subject to the requirements

8  of Rule 9(b)").  Plaintiffs have failed to meet this pleading burden, *see B.L.M. v. Sabo & Deitsch*,

9  55 Cal. App. 4th 823, 834 (1997), and thus their negligent misrepresentation claim fails for this

10  independent reason as well.

### A.  Plaintiffs Do Not Have Standing To Bring A Negligent Misrepresentation Claim Against Deloitte

13  Third-party claims for negligent misrepresentation against an auditor – *i.e.*, claims

14  brought by parties other than the company for which the audit services were performed – must

15  satisfy the strict standing requirement established by the California Supreme Court in *Bily*.

16  3 Cal. 4th at 376.  Plaintiffs have failed to do so here.  In *Bily*, the California Supreme Court

17  resolved "questions concerning the role of the accounting profession in performing audits" and

18  the potentially "limitless scope of an accountant's liability to nonclients who may come to read

19  and rely on audit reports."  *Id.*  After a lengthy analysis, the Court adopted Section 552 of the

20  *Restatement* (*Second*) *of Torts* and limited the scope of recovery from an auditor for negligent

21  misrepresentation to a "narrow and circumscribed class of persons."  *Id.* at 408.  Accordingly,

22  the Court limited an auditor's liability for negligent misrepresentation to "those situations in

23  which the [auditor] undertakes to supply information to a third party whom [it] knows is likely to

24  rely on it in a transaction that has sufficiently specific economic parameters to permit [the

25  auditor] to assess the risk of moving forward."  *Id.* at 409.

26  The *Bily* Court determined that the existence of an auditor's duty to a third party requires

27  two components; *i.e.*, both a "who" and a "what."  *See id.*  There must be a specific person or

28  "limited group" to whom the auditor intends to supply the report *and* the auditor must *intend* to

1  influence such person or group regarding a transaction "identified to the" auditor.  *Id.* at 392.  In

2  adopting this closely-drawn limitation of Section 552, *Bily* acknowledged that an auditor "has a

3  legitimate concern as to the nature and scope of a client's transactions that may expand the

4  [auditor's] exposure to liability … particularly to the extent of the proposed transaction."  *Id.* at

5  392-93 (citing *Restatement* (*Second*) *of Torts* § 552(2), comment (h)).  For example, the standing

6  requirements of *Bily* may be satisfied where the auditor performs an audit and issues an opinion

7  with the understanding and intent that a major shareholder or creditor will rely on that opinion in

8  evaluating a particular transaction.  *See*, *e.g.*, *Murphy v. BDO Seidman, LLP*, 113 Cal. App. 4th

9  687, 696-97 (2003).  *Bily* thus created "*an objective standard* that looks to the specific

10  circumstances (*e.g.*, supplier-client engagement and the supplier's communications with the third

11  party)" to determine the existence of a duty.  3 Cal. 4th at 410 (emphasis in original).

12      Under *Bily*, purchasers of a company's securities do *not* have standing to bring a claim

13  against an auditor based on the auditor's regular annual audits:  "[A]n auditor retained to conduct

14  an annual audit and to furnish an opinion for no particular purpose generally undertakes no duty

15  to third parties."  *Bily*, 3 Cal. 4th at 393.  This rule applies even though such an audit opinion is

16  "customarily used in a wide variety of financial transactions by the [client] corporation and that

17  [the opinion] may be relied upon by lenders, investors, shareholders, creditors, purchasers and

18  the like[.]"  *Id.*; *see also Indus. Indem. Co. v. Touche Ross & Co.*, 13 Cal. App. 4th 1086, 1094

19  (1993); *Ellis v. Grant Thornton LLP*, 530 F.3d 280, 290-91 (4th Cir. 2008) (describing logical

20  underpinning of Section 552).

21      Here, Plaintiffs allege that Deloitte "served as WaMu's outside auditor for years" and

22  was engaged to provide annual audits.  Compl. ¶ 35.  Plaintiffs do not allege they had any

23  communications with Deloitte.  Nor do they allege that Deloitte furnished its audit and internal

24  controls opinions in connection with WaMu's Forms 10-K for 2005, 2006 and 2007 to Plaintiffs

25  for any particular purpose.  Indeed, Plaintiffs' allegations make clear that the 2005 and 2006

26  audit opinions were issued to WaMu many months before Plaintiffs' note purchases were even

27  contemplated.  *Id.* ¶¶ 60, 69, 211, 274.  Plaintiffs' generalized allegation that all "prospective and

28

1    existing investors in WaMu, like Plaintiffs, were the intended beneficiaries" of Deloitte's work

2    (Compl. ¶ 318) is plainly insufficient.  *See Bily*, 3 Cal. 4th at 394.

3         Plaintiffs' allegation that "the reports were specifically addressed to WaMu's

4    stockholders" also fails to establish standing.  Compl. ¶ 313.  Bestowing standing on such a

5    nebulous group would eviscerate the limitation on auditor liability established by *Bily* and would

6    not comport with the "limited group" restriction set forth in Section 552.  *See Scottish Heritable*

7    *Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 613 (5th Cir. 1996); *In re Delmarva Sec.*

8    *Litig.*, 794 F. Supp. 1293, 1310 (D. Del. 1992).  Thus, Plaintiffs are not within the "limited

9    group" of third-party plaintiffs contemplated by *Bily*, and the open market transactions in which

10   they allegedly engaged do not qualify as "specific transactions."  Plaintiffs' negligent

11   misrepresentation claim against Deloitte should be dismissed for lack of standing.

### B.    Plaintiffs Have Not Alleged The Elements Of A Negligent Misrepresentation Claim With The Requisite Particularity

14        Furthermore, Plaintiffs have not satisfied the strict pleading requirements of Rule 9(b) as

15   to each element of their negligent misrepresentation cause of action.  *Cadlo*, 125 Cal. App. 4th at

16   519 (noting that negligent misrepresentation shares the same elements as fraud, except there is

17   no requirement of intent to induce reliance, and that each element "must be factually and

18   specifically alleged").  For the reasons stated above, Plaintiffs have not alleged any facts, let

19   alone particularized facts, sufficient to support a finding that (1) that WaMu's Allowance was

20   materially understated at years end 2005, 2006 or 2007, or (2) that Deloitte's audit opinions were

21   false or misleading in any way.  *See supra* at 7-11.  Plaintiffs do not allege with the requisite

22   particularity any false statement made by Deloitte, and thus have not complied with Rule 9(b)'s

23   strict pleading requirements.

24        Moreover, in order to survive a motion to dismiss, Plaintiffs must allege that Deloitte

25   lacked a reasonable basis for its statements.  *See Friedman*, 107 Cal. App. 4th at 476; *Bily*, 3 Cal.

26   4th at 407-08.  Although the Complaint broadly asserts that Deloitte's audits of WaMu did not

27   comport with GAAS, the Complaint alleges no facts supporting this allegation; Plaintiffs fail to

28   allege the procedures that Deloitte did employ, and fail to allege how Deloitte would have known

1  that WaMu's Allowance was understated if different procedures had been used.  *See Scognamillo*

2  *v. Credit Suisse First Boston LLC*, No. C03-2061-TEH, 2005 U.S. Dist. LEXIS 20221, at *25-26

3  (N.D. Cal. Aug. 25, 2005) (dismissing California law claim of negligent misrepresentation;

4  disregarding allegations that defendants "knew, should have known, or were reckless in not

5  knowing" of misconduct as unsupported by factual allegations about how the defendants could

6  or would have known about the misconduct).

7     Finally, as set forth above, Plaintiffs have failed to plead actual reliance on any

8  misstatement made by Deloitte with the required particularity.  *Cadlo*, 125 Cal. App. 4th at 519

9  (holding plaintiff alleging negligent misrepresentation "must allege the specifics of his or her

10  reliance on the misrepresentation to show a bona fide claim of actual reliance."); *see also Bily*, 3

11  Cal. 4th at 413 (holding "the gravamen of the cause of action for negligent misrepresentation in

12  this context is actual, justifiable reliance on the representations in [the audit] report").

13     Plaintiffs' claim for negligent misrepresentation against Deloitte must be dismissed.

14  **V.   PLAINTIFFS' CLAIM FOR VIOLATION OF CALIFORNIA SECURITIES
         LAWS SHOULD BE DISMISSED**

15

16     **A.   Plaintiffs Cannot Allege That Deloitte Was A "Seller" Of WaMu's Notes, As
            Required By Corporations Code Section 25400**

17     Plaintiffs seek to hold Deloitte liable under Sections 25400 of the California Corporations

18  Code for its alleged participation in a "scheme and conspiracy" to induce Plaintiffs' purchase of

19  the WaMu Notes.  Compl. ¶¶ 374-78.  However, civil liability under Section 25400 "applies only

20  to a defendant who is either a person selling or offering to sell or buying or offering to buy a

21  security."  *Kamen v. Lindly*, 94 Cal. App. 4th 197, 206 (2001) (holding that accounting firm

22  cannot be liable under § 25400 because complaint did not allege that firm ever sold or offered to

23  sell the securities at issue).  Plaintiffs cannot state such a claim against Deloitte as a matter of

24  law.  *See id.*

25     This rule arises directly from Section 25500, which creates the private right of action for

26  violations of Section 25400.  Section 25500 provides in relevant part that "[a]ny person who

27  willfully participates in any act or transaction in violation of Section 25400 shall be liable to any

28  person who purchases or sells any security at a price which was affected by such act or

transaction[.]" Cal. Corp. Code § 25500.  As *Kamen* makes clear, however, Sections 25400 and 25500 distinguish between participants who "engaged in market activity" and those who allegedly "aided" the seller's participation in such market activity.  *Kamen*, 94 Cal. App. 4th at 204-05.  In contrast to Sections 25504 and 25504.1 – which expressly impose liability on certain controlling persons and aiders and abettors – Sections 25400 and 25500 do not provide for secondary liability.  *Id.*  Comparing these Code Sections demonstrates that "the Legislature knows how to establish secondary liability when it wants to do so, yet failed to do so with respect to Section 25400."  *Id.* at 204.

Plaintiffs do not allege that Deloitte sold or offered to sell the WaMu Notes – nor can they.  Thus, they may not assert a claim against Deloitte for a violation of Section 25400.  *See Murphy*, 113 Cal. App. 4th at 705 (dismissing Section 25400 claim against accountants because liability is limited to someone offering to buy or sell securities); *Scognamillo*, 2005 U.S. Dist. LEXIS 20221, at *27 (finding that "Sections 25400 and 25500 of the Corporations Code only apply to buyers or sellers of securities"); *accord* Harold J. Marsh & Robert H. Volk, *Practice Under the California Securities Laws,* § 14.05[4], at 14-67-14-68 (2001).  Plaintiffs' Section 25400 claim must be dismissed.

### B.    Plaintiffs Do Not Have Standing To Bring Claims Under Corporations Code Section 25403

Plaintiffs' claim under Section 25403 of the California Corporations Code similarly fails because there is no private right of action under that provision.  Section 25403(b) makes it unlawful to knowingly provide substantial assistance to another person in violation of Sections 25400 and 25404 of the Code.  *See* Cal. Corp. Code. § 25403(b).  However, "the civil liability provisions of the statute (§§ 25500-25510) do not expressly provide a private right of action for a violation of section 25403, as they do for other specified provisions of the Act."  *Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 158 Cal. App. 4th 226, 255 (2007); *see also Scognamillo*, 2005 U.S. Dist. LEXIS 20221, at *28-29.  Without a private right of action, Plaintiffs are unable to state a claim under the statute.  *Apollo Capital*, 158 Cal. App. 4th at 255.  Plaintiffs cannot state a claim against Deloitte for violation of the California Corporations Code.

1

## VI.    CONCLUSION

2          For these reasons, the claims against Deloitte should be dismissed with prejudice.

3   DATED:  February 16, 2010

4   LATHAM & WATKINS LLP                    SUMMIT LAW GROUP PLLC
    Peter A. Wald (*peter.wald@lw.com*)
5   Matthew D. Harrison (*matt.harrison@lw.com*)    By   */s/ Ralph H. Palumbo*
    505 Montgomery St., Suite 2000
6   San Francisco, CA 94111-2562            Ralph H. Palumbo (WSBA No. 04751)
    Phone: (415) 391-0600                      *ralphp@SummitLaw.com*
7                                           315 Fifth Avenue South, Suite 1000
    James J. Farrell (*james.farrell@lw.com*)    Seattle, Washington 98104-2682
8   Wendy P. Harper (*wendy.harper@lw.com*)    Phone:  (206) 676-7000
    355 S. Grand Avenue
9   Los Angeles, CA 90071-1560
    Phone: (213) 485-1234                    Attorneys for Defendant
10                                          Deloitte & Touche LLP

11  Admitted *pro hac vice*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the Court's Electronic Mail Notice List.

Dated: February 16, 2010

By: */s/ Ralph H. Palumbo*
Ralph H. Palumbo (WSBA No. 04751)