# EXHIBIT 2

 Financial Accounting Standards Board

# ORIGINAL PRONOUNCEMENTS

### AS AMENDED

## Statement of Financial Accounting Standards No. 5

Accounting for Contingencies

Copyright © 2008 by Financial Accounting Standards Board. All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the Financial Accounting Standards Board.

119

# Statement of Financial Accounting Standards No. 5
# Accounting for Contingencies

## STATUS

Issued: March 1975

Effective Date: For fiscal years beginning on or after July 1, 1975

Affects: Deletes ARB 43, Chapter 6
       Supersedes ARB 50

Affected by: Paragraph 2 amended by FIN 48, paragraph C2(a)
           Paragraph 7 amended by FAS 87, paragraph 70; FAS 112, paragraph 10; FAS 123,
              paragraph 385; and FAS 123(R), paragraph D2
           Paragraph 13 deleted by FAS 71, paragraph 26(o)
           Paragraph 18 amended by FAS 111, paragraph 8(s)
           Paragraph 20 replaced by FAS 11, paragraph 10
           Paragraph 23 amended by FAS 114, paragraph 21
           Paragraph 39 amended by FIN 48, paragraph C2(b)
           Paragraphs 41 and 102 amended by FAS 60, paragraph 63
           Paragraph 44 amended by FAS 113, paragraph 30
           Footnote 3 deleted by FAS 16, paragraph 16(d)

Other Interpretive Pronouncements: FIN 14
                                   FIN 34 (Superseded by FIN 45)
                                   FIN 45

Other Interpretive Release: FASB *Viewpoints,* "Application of FASB Statements 5 and 114 to a Loan
                        Portfolio," April 12, 1999 (in *Current Text* Section I08)

AICPA Accounting Standards Executive Committee (AcSEC)

  Related Pronouncements: SOP 90-7
                         SOP 93-1
                         SOP 94-6
                         SOP 96-1
                         SOP 97-3
                         SOP 98-7

Issues Discussed by FASB Emerging Issues Task Force (EITF)

  Affects: No EITF Issues

  Interpreted by: Paragraph 8 interpreted by EITF Issues No. 87-22 and 92-13 and Topics No. D-47 and D-57
                 Paragraph 9 interpreted by EITF Issue No. 92-13
                 Paragraph 45 interpreted by EITF Issue No. 93-14

  Related Issues: EITF Issues No. 91-10, 93-6, 97-1, 98-9, 99-14, 99-20, 00-22, 00-26, 01-9, 01-10, 02-16,
               03-8, and 03-17 and Topics No. D-35, D-77, D-80, and D-89

**FAS5**                     *FASB Statement of Standards*

# Statement of Financial Accounting Standards No. 5
# Accounting for Contingencies

## CONTENTS

|  | Paragraph Numbers |
|---|---|
| Introduction | 1– 7 |
| Standards of Financial Accounting and Reporting: | |
|     Accrual of Loss Contingencies | 8 |
|     Disclosure of Loss Contingencies | 9– 13 |
|     General or Unspecified Business Risks | 14 |
|     Appropriation of Retained Earnings | 15 |
|     Examples of Application of This Statement | 16 |
|     Gain Contingencies | 17 |
|     Other Disclosures | 18– 19 |
|     Effective Date and Transition | 20 |
| Appendix A: Examples of Application of This Statement | 21– 45 |
| Appendix B: Background Information | 46– 54 |
| Appendix C: Basis for Conclusions | 55–104 |

## INTRODUCTION

1. For the purpose of this Statement, a contingency is defined as an existing condition, situation, or set of circumstances involving uncertainty as to possible gain (hereinafter a "gain contingency") or loss[1] (hereinafter a "loss contingency") to an enterprise that will ultimately be resolved when one or more future events occur or fail to occur. Resolution of the uncertainty may confirm the acquisition of an asset or the reduction of a liability or the loss or impairment of an asset or the incurrence of a liability.

2. Not all uncertainties inherent in the accounting process give rise to contingencies as that term is used in this Statement.[1a] Estimates are required in financial statements for many on-going and recurring activities of an enterprise. The mere fact that an estimate is involved does not of itself constitute the type of uncertainty referred to in the definition in paragraph 1. For example, the fact that estimates are used to allocate the known cost of a depreciable asset over the period of use by an enterprise does not make depreciation a contingency; the eventual expiration of the utility of the asset is not uncertain. Thus, depreciation of assets is not a contingency as defined in paragraph 1, nor are such matters as recurring repairs, maintenance, and overhauls, which interrelate with depreciation. Also, amounts owed for services received, such as advertising and utilities, are not contingencies even though the accrued amounts may have been estimated; there is nothing uncertain about the fact that those obligations have been incurred.

3. When a loss contingency exists, the likelihood that the future event or events will confirm the loss or impairment of an asset or the incurrence of a liability can range from probable to remote. This Statement uses the terms *probable, reasonably possible,* and *remote* to identify three areas within that range, as follows:

a. *Probable.* The future event or events are likely to occur.
b. *Reasonably possible.* The chance of the future event or events occurring is more than remote but less than likely.

---

[1]The term *loss* is used for convenience to include many charges against income that are commonly referred to as *expenses* and others that are commonly referred to as *losses.*

[1a]Because FASB Interpretation No. 48, *Accounting for Uncertainty in Income Taxes,* provides guidance on accounting for uncertainty in income taxes, this Statement no longer applies to income taxes.

c. *Remote*. The chance of the future event or events occurring is slight.

4. Examples of loss contingencies include:

a. Collectibility of receivables.
b. Obligations related to product warranties and product defects.
c. Risk of loss or damage of enterprise property by fire, explosion, or other hazards.
d. Threat of expropriation of assets.
e. Pending or threatened litigation.
f. Actual or possible claims and assessments.
g. Risk of loss from catastrophes assumed by property and casualty insurance companies including reinsurance companies.
h. Guarantees of indebtedness of others.
i. Obligations of commercial banks under "standby letters of credit."[2]
j. Agreements to repurchase receivables (or to repurchase the related property) that have been sold.

5. Some enterprises now accrue estimated losses from some types of contingencies by a charge to income prior to the occurrence of the event or events that are expected to resolve the uncertainties while, under similar circumstances, other enterprises account for those losses only when the confirming event or events have occurred.

6. This Statement establishes standards of financial accounting and reporting for loss contingencies (see paragraphs 8–16) and carries forward without reconsideration the conclusions of *Accounting Research Bulletin (ARB) No. 50*, "Contingencies," with respect to gain contingencies (see paragraph 17) and other disclosures (see paragraphs 18–19). The basis for the Board's conclusions, as well as alternatives considered and reasons for their rejection, are discussed in Appendix C. Examples of application of this Statement are presented in Appendix A, and background information is presented in Appendix B.

7. This Statement supersedes both *ARB No. 50* and Chapter 6, "Contingency Reserves," of *ARB No. 43*. The conditions for accrual of loss contingencies in paragraph 8 of this Statement do not amend any other present requirement in an Accounting Research Bulletin or Opinion of the Accounting Principles Board to accrue a particular type of loss or expense. Thus, for example, deferred compensation contracts and stock issued to employees are excluded from the scope of this Statement. Those matters are covered, respectively, in *APB Opinion No. 12*, "Omnibus Opinion—1967," paragraphs 6–8, and FASB Statement No. 123 (revised 2004), *Share-Based Payment*. Accounting for other employment-related costs is also excluded from the scope of this Statement except for postemployment benefits that become subject to this Statement through application of FASB Statement No. 112, *Employers' Accounting for Post-employment Benefits*.

## STANDARDS OF FINANCIAL ACCOUNTING AND REPORTING

### Accrual of Loss Contingencies

8. An estimated loss from a loss contingency (as defined in paragraph 1) shall be accrued by a charge to income if *both* of the following conditions are met:

a. Information available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements.[4] It is implicit in this condition that it must be probable that one or more future events will occur confirming the fact of the loss.
b. The amount of loss can be reasonably estimated.

### Disclosure of Loss Contingencies

9. Disclosure of the nature of an accrual[5] made pursuant to the provisions of paragraph 8, and in some

---

[2]As defined by the Federal Reserve Board, "standby letters of credit" include "every letter of credit (or similar arrangement however named or designated) which represents an obligation to the beneficiary on the part of the issuer (1) to repay money borrowed by or advanced to or for the account of the account party or (2) to make payment on account of any evidence of indebtedness undertaken by the account party or (3) to make payment on account of any default by the account party in the performance of an obligation." A note to that definition states that "as defined, 'standby letter of credit' would not include (1) commercial letters of credit and similar instruments where the issuing bank expects the beneficiary to draw upon the issuer and which do not 'guaranty' payment of a money obligation or (2) a guaranty or similar obligation issued by a foreign branch in accordance with and subject to the limitations of Regulation M [of the Federal Reserve Board]." Regulations of the Comptroller of the Currency and the Federal Deposit Insurance Corporation contain similar definitions.

[3][This footnote has been deleted. See Status page.]

[4]*Date of the financial statements* means the end of the most recent accounting period for which financial statements are being presented.

[5]Terminology used shall be descriptive of the nature of the accrual (see paragraphs 57–64 of *Accounting Terminology Bulletin No. 1*, "Review and Resume").

122

circumstances the amount accrued, may be necessary for the financial statements not to be misleading.

10. If no accrual is made for a loss contingency because one or both of the conditions in paragraph 8 are not met, or if an exposure to loss exists in excess of the amount accrued pursuant to the provisions of paragraph 8, disclosure of the contingency shall be made when there is at least a reasonable possibility that a loss or an additional loss may have been incurred.[6] The disclosure shall indicate the nature of the contingency and shall give an estimate of the possible loss or range of loss or state that such an estimate cannot be made. Disclosure is not required of a loss contingency involving an unasserted claim or assessment when there has been no manifestation by a potential claimant of an awareness of a possible claim or assessment unless it is considered probable that a claim will be asserted and there is a reasonable possibility that the outcome will be unfavorable.

11. After the date of an enterprise's financial statements but before those financial statements are issued, information may become available indicating that an asset was impaired or a liability was incurred after the date of the financial statements or that there is at least a reasonable possibility that an asset was impaired or a liability was incurred after that date. The information may relate to a loss contingency that existed at the date of the financial statements, e.g., an asset that was not insured at the date of the financial statements. On the other hand, the information may relate to a loss contingency that did not exist at the date of the financial statements, e.g., threat of expropriation of assets after the date of the financial statements or the filing for bankruptcy by an enterprise whose debt was guaranteed after the date of the financial statements. In none of the cases cited in this paragraph was an asset impaired or a liability incurred at the date of the financial statements, and the condition for accrual in paragraph 8(a) is, therefore, not met. Disclosure of those kinds of losses or loss contingencies may be necessary, however, to keep the financial statements from being misleading. If disclosure is deemed necessary, the financial statements shall indicate the nature of the loss or loss con-

tingency and give an estimate of the amount or range of loss or possible loss or state that such an estimate cannot be made. Occasionally, in the case of a loss arising after the date of the financial statements where the amount of asset impairment or liability incurrence can be reasonably estimated, disclosure may best be made by supplementing the historical financial statements with pro forma financial data giving effect to the loss as if it had occurred at the date of the financial statements. It may be desirable to present pro forma statements, usually a balance sheet only, in columnar form on the face of the historical financial statements.

12. Certain loss contingencies are presently being disclosed in financial statements even though the possibility of loss may be remote. The common characteristic of those contingencies is a guarantee, normally with a right to proceed against an outside party in the event that the guarantor is called upon to satisfy the guarantee. Examples include (a) guarantees of indebtedness of others, (b) obligations of commercial banks under "standby letters of credit," and (c) guarantees to repurchase receivables (or, in some cases, to repurchase the related property) that have been sold or otherwise assigned. The Board concludes that disclosure of those loss contingencies, and others that in substance have the same characteristic, shall be continued. The disclosure shall include the nature and amount of the guarantee. Consideration should be given to disclosing, if estimable, the value of any recovery that could be expected to result, such as from the guarantor's right to proceed against an outside party.

13. [This paragraph has been deleted. See Status page.]

**General or Unspecified Business Risks**

14. Some enterprises have in the past accrued so-called "reserves for general contingencies." General or unspecified business risks do not meet the conditions for accrual in paragraph 8, and no accrual for loss shall be made. No disclosure about them is required by this Statement.

---

[6]For example, disclosure shall be made of any loss contingency that meets the condition in paragraph 8(a) but that is not accrued because the amount of loss cannot be reasonably estimated (paragraph 8(b)). Disclosure is also required of some loss contingencies that do not meet the condition in paragraph 8(a)—namely, those contingencies for which there is a *reasonable possibility* that a loss may have been incurred even though information may not indicate that it is *probable* that an asset had been impaired or a liability had been incurred at the date of the financial statements.

### Appropriation of Retained Earnings

15. Some enterprises have classified a portion of retained earnings as "appropriated" for loss contingencies. In some cases, the appropriation has been shown outside the stockholders' equity section of the balance sheet. Appropriation of retained earnings is not prohibited by this Statement provided that it is shown within the stockholders' equity section of the balance sheet and is clearly identified as an appropriation of retained earnings. Costs or losses shall not be charged to an appropriation of retained earnings, and no part of the appropriation shall be transferred to income.

### Examples of Application of This Statement

16. Examples of application of the conditions for accrual of loss contingencies in paragraph 8 and the disclosure requirements in paragraphs 9–11 are presented in Appendix A.

### Gain Contingencies

17. The Board has not reconsidered *ARB No. 50* with respect to gain contingencies. Accordingly, the following provisions of paragraphs 3 and 5 of that Bulletin shall continue in effect:

a. Contingencies that might result in gains usually are not reflected in the accounts since to do so might be to recognize revenue prior to its realization.

b. Adequate disclosure shall be made of contingencies that might result in gains, but care shall be exercised to avoid misleading implications as to the likelihood of realization.

### Other Disclosures

18. Paragraph 6 of *ARB No. 50* required disclosure of a number of situations including "unused letters of credit, long-term leases, assets pledged as security for loans, pension plans, the existence of cumulative preferred stock dividends in arrears, and commitments such as those for plant acquisition or an obligation to reduce debts, maintain working capital, or restrict dividends." Subsequent Opinions issued by the Accounting Principles Board and Statements issued by the Financial Accounting Standards Board established more explicit disclosure requirements for a number of those items.

19. Situations of the type described in the preceding paragraph shall continue to be disclosed in financial statements, and this Statement does not alter the present disclosure requirements with respect to those items.

### Effective Date and Transition

20. *FASB Statement No. 5* shall be effective for fiscal years beginning on or after July 1, 1975, although earlier application is encouraged. Thereafter, if financial statements for periods before the effective date, and financial summaries or other data derived therefrom, are presented, they shall be restated, if practicable, to conform to the provisions of paragraph 8 or 14 of *FASB Statement No. 5*.[6a] In the year that the Statement is first applied, the financial statements shall disclose the nature of any restatement and its effect on income before extraordinary items, net income, and related per share amounts for each period restated. If restatement of financial statements or summaries for all prior periods presented is not practicable, information presented shall be restated for as many consecutive periods immediately preceding the effective date of *FASB Statement No. 5* as is practicable, and the cumulative effect of applying paragraph 8 or 14 on the retained earnings at the beginning of the earliest period restated (or at the beginning of the period in which the Statement is first applied if it is not practicable to restate any prior periods) shall be included in determining net income of that period (see paragraph 20 of *APB Opinion No. 20*).[6b] The effect on income before extraordinary items, net income, and related per share amounts of applying *FASB Statement No. 5* in a period in which the cumulative effect is included in determining net income shall be disclosed for that period, and the reason for not restating all of the prior periods presented shall be explained. Reclassification of an appropriation of retained earnings to comply with paragraph 15 of *FASB Statement No. 5* shall be made in any financial statements for periods before the effective date of the Statement, or financial summaries or other data derived therefrom, that are presented after the effective date of the Statement.

---

[6a] This does not alter the accounting for changes in estimates—see paragraph 31 of *APB Opinion No. 20*.

[6b] Pro forma disclosures required by paragraphs 19(d) and 21 of *APB Opinion No. 20* are not applicable.

**FAS5**                    *FASB Statement of Standards*

> The provisions of this Statement need
> not be applied to immaterial items.

*This Statement was adopted by the unanimous vote of the seven members of the Financial Accounting Standards Board:*

| Marshall S. Armstrong, | Donald J. Kirk | Walter Schuetze |
| *Chairman* | Arthur L. Litke | Robert T. Sprouse |
| Oscar S. Gellein | Robert E. Mays | |

**Appendix A**

**EXAMPLES OF APPLICATION OF THIS STATEMENT**

21. This Appendix contains examples of application of the conditions for accrual of loss contingencies in paragraph 8 and of the disclosure requirements in paragraphs 9–11. Some examples have been included in response to questions raised in letters of comment on the Exposure Draft. It should be recognized that no set of examples can encompass all possible contingencies or circumstances. Accordingly, accrual and disclosure of loss contingencies should be based on an evaluation of the facts in each particular case.

**Collectibility of Receivables**

22. The assets of an enterprise may include receivables that arose from credit sales, loans, or other transactions. The conditions under which receivables exist usually involve some degree of uncertainty about their collectibility, in which case a contingency exists as defined in paragraph 1. Losses from uncollectible receivables shall be accrued when both conditions in paragraph 8 are met. Those conditions may be considered in relation to individual receivables or in relation to groups of similar types of receivables. If the conditions are met, accrual shall be made even though the particular receivables that are uncollectible may not be identifiable.

23. If, based on current information and events, it is probable that the enterprise will be unable to collect all amounts due according to the contractual terms of the receivable, the condition in paragraph 8(a) is met. As used here, *all amounts due according to the contractual terms* means that both the contractual interest payments and the contractual principal payments will be collected as scheduled according to the re-

ceivable's contractual terms. However, a creditor need not consider an insignificant delay or insignificant shortfall in amount of payments as meeting the condition in paragraph 8(a). Whether the amount of loss can be reasonably estimated (the condition in paragraph 8(b)) will normally depend on, among other things, the experience of the enterprise, information about the ability of individual debtors to pay, and appraisal of the receivables in light of the current economic environment. In the case of an enterprise that has no experience of its own, reference to the experience of other enterprises in the same business may be appropriate. Inability to make a reasonable estimate of the amount of loss from uncollectible receivables (i.e., failure to satisfy the condition in paragraph 8(b)) precludes accrual and may, if there is significant uncertainty as to collection, suggest that the installment method, the cost recovery method, or some other method of revenue recognition be used (see paragraph 12 of *APB Opinion No. 10*, "Omnibus Opinion—1966"); in addition, the disclosures called for by paragraph 10 of this Statement should be made.

**Obligations Related to Product Warranties and Product Defects**

24. A warranty is an obligation incurred in connection with the sale of goods or services that may require further performance by the seller after the sale has taken place. Because of the uncertainty surrounding claims that may be made under warranties, warranty obligations fall within the definition of a contingency in paragraph 1. Losses from warranty obligations shall be accrued when the conditions in paragraph 8 are met. Those conditions may be considered in relation to individual sales made with warranties or in relation to groups of similar types of sales made with warranties. If the conditions are met,

125

accrual shall be made even though the particular parties that will make claims under warranties may not be identifiable.

25. If, based on available information, it is probable that customers will make claims under warranties relating to goods or services that have been sold, the condition in paragraph 8(a) is met at the date of an enterprise's financial statements because it is probable that a liability has been incurred. Satisfaction of the condition in paragraph 8(b) will normally depend on the experience of an enterprise or other information. In the case of an enterprise that has no experience of its own, reference to the experience of other enterprises in the same business may be appropriate. Inability to make a reasonable estimate of the amount of a warranty obligation at the time of sale because of significant uncertainty about possible claims (i.e., failure to satisfy the condition in paragraph 8(b)) precludes accrual and, if the range of possible loss is wide, may raise a question about whether a sale should be recorded prior to expiration of the warranty period or until sufficient experience has been gained to permit a reasonable estimate of the obligation; in addition, the disclosures called for by paragraph 10 of this Statement should be made.

26. Obligations other than warranties may arise with respect to products or services that have been sold, for example, claims resulting from injury or damage caused by product defects. If it is probable that claims will arise with respect to products or services that have been sold, accrual for losses may be appropriate. The condition in paragraph 8(a) would be met, for instance, with respect to a drug product or toys that have been sold if a health or safety hazard related to those products is discovered and as a result it is considered probable that liabilities have been incurred. The condition in paragraph 8(b) would be met if experience or other information enables the enterprise to make a reasonable estimate of the loss with respect to the drug product or the toys.

### Risk of Loss or Damage of Enterprise Property

27. At the date of an enterprise's financial statements, it may not be insured against risk of future loss or damage to its property by fire, explosion, or other hazards. The absence of insurance against losses from risks of those types constitutes an existing condition involving uncertainty about the amount and timing of any losses that may occur, in which case a contingency exists as defined in paragraph 1. Uninsured risks may arise in a number of ways, including (a) noninsurance of certain risks or coinsurance or deductible clauses in an insurance contract or (b) insurance through a subsidiary or investee[7] to the extent not reinsured with an independent insurer. Some risks, for all practical purposes, may be noninsurable, and the self-assumption of those risks is mandatory.

28. The absence of insurance does not mean that an asset has been impaired or a liability has been incurred at the date of an enterprise's financial statements. Fires, explosions, and other similar events that may cause loss or damage of an enterprise's property are random in their occurrence.[8] With respect to events of that type, the condition for accrual in paragraph 8(a) is not satisfied prior to the occurrence of the event because until that time there is no diminution in the value of the property. There is no relationship of those events to the activities of the enterprise prior to their occurrence, and no asset is impaired prior to their occurrence. Further, unlike an insurance company, which has a contractual obligation under policies in force to reimburse insureds for losses, an enterprise can have no such obligation to itself and, hence, no liability.

### Risk of Loss from Future Injury to Others, Damage to the Property of Others, and Business Interruption

29. An enterprise may choose not to purchase insurance against risk of loss that may result from injury to others, damage to the property of others, or interruption of its business operations.[9] Exposure to risks of those types constitutes an existing condition involving uncertainty about the amount and timing of any losses that may occur, in which case a contingency exists as defined in paragraph 1.

---

[7] The effects of transactions between a parent or other investor and a subsidiary or investee insurance company shall be eliminated from an enterprise's financial statements (see paragraph 6 of *ARB No. 51,* "Consolidated Financial Statements," and paragraph 19(a) of *APB Opinion No. 18,* "The Equity Method of Accounting for Investments in Common Stock").

[8] The Board recognizes that, in practice, experience regarding loss or damage to depreciable assets is in some cases one of the factors considered in estimating the depreciable lives of a group of depreciable assets, along with such other factors as wear and tear, obsolescence, and maintenance and replacement policies. This Statement is not intended to alter present depreciation practices (see paragraph 2).

[9] As to injury or damage resulting from products that have been sold, see paragraph 26.

**FAS5**                    *FASB Statement of Standards*

30. Mere exposure to risks of those types, however, does not mean that an asset has been impaired or a liability has been incurred. The condition for accrual in paragraph 8(a) is not met with respect to loss that may result from injury to others, damage to the property of others, or business interruption that may occur after the date of an enterprise's financial statements. Losses of those types do not relate to the current or a prior period but rather to the *future* period in which they occur. Thus, for example, an enterprise with a fleet of vehicles should not accrue for injury to others or damage to the property of others that may be caused by those vehicles in the future even if the amount of those losses may be reasonably estimable. On the other hand, the conditions in paragraph 8 would be met with respect to uninsured losses resulting from injury to others or damage to the property of others that took place prior to the date of the financial statements, even though the enterprise may not become aware of those matters until after that date, if the experience of the enterprise or other information enables it to make a reasonable estimate of the loss that was incurred prior to the date of its financial statements.

### Write-Down of Operating Assets

31. In some cases, the carrying amount of an operating asset not intended for disposal may exceed the amount expected to be recoverable through future use of that asset even though there has been no physical loss or damage of the asset or threat of such loss or damage. For example, changed economic conditions may have made recovery of the carrying amount of a productive facility doubtful. The question of whether, in those cases, it is appropriate to write down the carrying amount of the asset to an amount expected to be recoverable through future operations is not covered by this Statement.

### Threat of Expropriation

32. The threat of expropriation of assets is a contingency within the definition of paragraph 1 because of the uncertainty about its outcome and effect. If information indicates that expropriation is imminent and compensation will be less than the carrying amount of the assets, the condition for accrual in paragraph 8(a) is met. Imminence may be indicated, for example, by public or private declarations of intent by a government to expropriate assets of the enterprise or actual expropriation of assets of other enterprises. Paragraph 8(b) requires that accrual be made only if the amount of loss can be reasonably estimated. If the

conditions for accrual are not met, the disclosures specified in paragraph 10 would be made when there is at least a reasonable possibility that an asset has been impaired.

### Litigation, Claims, and Assessments

33. The following factors, among others, must be considered in determining whether accrual and/or disclosure is required with respect to pending or threatened litigation and actual or possible claims and assessments:

a. The period in which the underlying cause (i.e., the cause for action) of the pending or threatened litigation or of the actual or possible claim or assessment occurred.
b. The degree of probability of an unfavorable outcome.
c. The ability to make a reasonable estimate of the amount of loss.

34. As a condition for accrual of a loss contingency, paragraph 8(a) requires that information available prior to the issuance of financial statements indicate that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements. Accordingly, accrual would clearly be inappropriate for litigation, claims, or assessments whose underlying cause is an event or condition occurring after the date of financial statements but before those financial statements are issued, for example, a suit for damages alleged to have been suffered as a result of an accident that occurred after the date of the financial statements. Disclosure may be required, however, by paragraph 11.

35. On the other hand, accrual may be appropriate for litigation, claims, or assessments whose underlying cause is an event occurring on or before the date of an enterprise's financial statements even if the enterprise does not become aware of the existence or possibility of the lawsuit, claim, or assessment until after the date of the financial statements. If those financial statements have not been issued, accrual of a loss related to the litigation, claim, or assessment would be required if the probability of loss is such that the condition in paragraph 8(a) is met and the amount of loss can be reasonably estimated.

36. If the underlying cause of the litigation, claim, or assessment is an event occurring before the date of an enterprise's financial statements, the probability of an outcome unfavorable to the enterprise must be assessed to determine whether the condition in paragraph 8(a) is met. Among the factors that should be

127

considered are the nature of the litigation, claim, or assessment, the progress of the case (including progress after the date of the financial statements but before those statements are issued), the opinions or views of legal counsel and other advisers, the experience of the enterprise in similar cases, the experience of other enterprises, and any decision of the enterprise's management as to how the enterprise intends to respond to the lawsuit, claim, or assessment (for example, a decision to contest the case vigorously or a decision to seek an out-of-court settlement). The fact that legal counsel is unable to express an opinion that the outcome will be favorable to the enterprise should not necessarily be interpreted to mean that the condition for accrual of a loss in paragraph 8(a) is met.

37. The filing of a suit or formal assertion of a claim or assessment does not automatically indicate that accrual of a loss may be appropriate. The degree of probability of an unfavorable outcome must be assessed. The condition for accrual in paragraph 8(a) would be met if an unfavorable outcome is determined to be probable. If an unfavorable outcome is determined to be reasonably possible but not probable, or if the amount of loss cannot be reasonably estimated, accrual would be inappropriate, but disclosure would be required by paragraph 10 of this Statement.

38. With respect to unasserted claims and assessments, an enterprise must determine the degree of probability that a suit may be filed or a claim or assessment may be asserted and the possibility of an unfavorable outcome. For example, a catastrophe, accident, or other similar physical occurrence predictably engenders claims for redress, and in such circumstances their assertion may be probable; similarly, an investigation of an enterprise by a governmental agency, if enforcement proceedings have been or are likely to be instituted, is often followed by private claims for redress, and the probability of their assertion and the possibility of loss should be considered in each case. By way of further example, an enterprise may believe there is a possibility that it has infringed on another enterprise's patent rights, but the enterprise owning the patent rights has not indicated an intention to take any action and has not even indicated an awareness of the possible infringement. In that case, a judgment must first be made as to whether the assertion of a claim is probable. If the judgment is that assertion is not probable, no accrual or disclosure would be required. On the other hand, if the judgment is that assertion is prob-

able, then a second judgment must be made as to the degree of probability of an unfavorable outcome. If an unfavorable outcome is probable and the amount of loss can be reasonably estimated, accrual of a loss is required by paragraph 8. If an unfavorable outcome is probable but the amount of loss cannot be reasonably estimated, accrual would not be appropriate, but disclosure would be required by paragraph 10. If an unfavorable outcome is reasonably possible but not probable, disclosure would be required by paragraph 10.

39. As a condition for accrual of a loss contingency, paragraph 8(b) requires that the amount of loss can be reasonably estimated. In some cases, it may be determined that a loss was incurred because an unfavorable outcome of the litigation, claim, or assessment is probable (thus satisfying the condition in paragraph 8(a)), but the range of possible loss is wide. For example, an enterprise may be litigating a dispute with another party. In preparation for the trial, it may determine that, based on recent developments involving one aspect of the litigation, it is probable that it will have to pay $2 million to settle the litigation. Another aspect of the litigation may, however, be open to considerable interpretation, and depending on the interpretation by the court the enterprise may have to pay an additional $8 million over and above the $2 million. In that case, paragraph 8 requires accrual of the $2 million if that is considered a reasonable estimate of the loss. Paragraph 10 requires disclosure of the additional exposure to loss if there is a reasonable possibility that the additional amounts will be paid. Depending on the circumstances, paragraph 9 may require disclosure of the $2 million that was accrued.

**Catastrophe Losses of Property and Casualty Insurance Companies**

40. At the time that a property and casualty insurance company or reinsurance company issues an insurance policy covering risk of loss from catastrophes, a contingency arises. The contingency is the risk of loss *assumed* by the insurance company, that is, the risk of loss from catastrophes that may occur *during the term of the policy.* The insurance company has not assumed risk of loss for catastrophes that may occur *beyond* the term of the policy. Clearly, therefore, no asset has been impaired or liability incurred with respect to catastrophes that may occur beyond the terms of policies in force.

41. The conditions in paragraph 8 should be considered with respect to the risk of loss assumed by an insurance company for catastrophes that may occur during the terms of policies in force to determine whether accrual of a loss is appropriate. To satisfy the condition in paragraph 8(a) that it be probable that a liability has been incurred to existing policyholders, the occurrence of catastrophes (i.e., the confirming future events) would have to be reasonably predictable within the terms of policies in force. Further, to satisfy the condition in paragraph 8(b), the amounts of losses therefrom would have to be reasonably estimable. Actuarial techniques are employed by insurance companies to predict the rate of occurrence of and amounts of losses from catastrophes over long periods of time for insurance rate-setting purposes. Predictions over relatively short periods of time, such as an individual accounting period or the terms of a large number of existing insurance policies in force, are subject to substantial deviations. Consequently, assumption of risk of loss from catastrophes by property and casualty insurance companies and reinsurance companies fails to satisfy the conditions for accrual in paragraphs 8(a) and 8(b). Moreover, deferral of unearned premiums *within* the terms of policies in force represents the "unknown liability" for loss (including catastrophe losses) on unexpired policies, making an accrual inappropriate—see paragraphs 94–96 in Appendix C. Recognition of premium income as earned revenue within the terms of policies in force is discussed in FASB Statement No. 60, *Accounting and Reporting by Insurance Enterprises.*

42. Although some property and casualty insurance companies have accrued an estimated amount for catastrophe losses, other insurance companies have accomplished the same objective by deferring a portion of the premium income. Deferral of any portion of premium income *beyond the terms of policies in force* is, in substance, similar to premature accrual of catastrophe losses and, therefore, also does not meet the conditions of paragraph 8.

43. The conditions for accrual in paragraph 8 do not prohibit a property and casualty insurance company from accruing probable catastrophe losses that have been incurred on or before the date of its financial statements but that have not been reported by its policyholders as of that date. If the amount of loss can be reasonably estimated, paragraph 8 requires accrual of those incurred-but-not-reported losses.

**Payments to Insurance Companies That May Not Involve Transfer of Risk**

44. To the extent that an insurance contract or reinsurance contract does not, despite its form, provide for indemnification of the insured or the ceding company by the insurer or reinsurer against loss or liability, the premium paid less the amount of the premium to be retained by the insurer or reinsurer shall be accounted for as a deposit by the insured or the ceding company. Those contracts may be structured in various ways, but if, regardless of form, their substance is that all or part of the premium paid by the insured or the ceding company is a deposit, it shall be accounted for as such.[9a]

45. Operations in certain industries may be subject to such high risks that insurance is unavailable or is available only at what is considered to be a prohibitively high cost. Some enterprises in those industries have "pooled" their risks by forming a mutual insurance company in which they retain an equity interest and to which they pay insurance premiums. For example, some electric utility companies have formed such a mutual insurance company to insure risks related to nuclear power plants, and some oil companies have formed a company to insure against risks associated with petroleum exploration and production. Whether the premium paid represents a payment for the transfer of risk or whether it represents merely a deposit will depend on the circumstances surrounding each enterprise's interest in and insurance arrangement with the mutual insurance company. An analysis of the contract is required to determine whether risk has been transferred and to what extent.

**Appendix B**

**BACKGROUND INFORMATION**

46. In April 1973, the FASB placed on its technical agenda a project then entitled "Accounting for Future Losses." The project addressed accrual and disclosure of loss contingencies. The Board believes that

---

[9a]Paragraphs 8–13 of FASB Statement No. 113, *Accounting and Reporting for Reinsurance of Short-Duration and Long-Duration Contracts*, identify conditions that are required for a reinsurance contract to indemnify the ceding enterprise against loss or liability and to be accounted for as reinsurance. Any transaction between enterprises to which FASB Statement No. 60, *Accounting and Reporting by Insurance Enterprises*, applies must meet those conditions to be accounted for as reinsurance.

12ᵘ

"Accounting for Contingencies" is a more descriptive title for this Statement than "Accounting for Future Losses."

47. A task force of 16 persons from industry, public accounting, the financial community, and academe was assembled in the summer of 1973 to provide counsel to the Board in preparing a Discussion Memorandum analyzing issues related to the project.

48. The Discussion Memorandum gave examples of various types of contingencies and considered several of those at length to assist in the development of standards of financial accounting and reporting. These included (a) uninsured risks ("self-insurance"), (b) risk of losses from catastrophes assumed by property and casualty insurance companies, and (c) risk of losses from expropriations by foreign governments.

49. Research undertaken in connection with this project included (a) a search of relevant literature, (b) an examination of published financial statements in annual reports to shareholders and in filings with the SEC on Form 10-K, (c) a questionnaire survey conducted by the Financial Executives Institute to which 64 companies responded, and (d) a study of catastrophe reserve accounting methods employed by property and casualty insurance companies. Summaries of research findings are included in appendices to the Discussion Memorandum.

50. On January 3, 1973 (prior to the date the Board placed this subject on its agenda), the Securities and Exchange Commission issued its *Accounting Series Release No. 134*, which pointed out that a number of property and casualty insurance companies had adopted the accounting policy of making a provision from each period's income to cover a portion of major losses expected to occur in future periods. The SEC Release indicated that the Committee on Insurance Accounting and Auditing of the AICPA was working actively on the subject in cooperation with industry groups. The Release set forth certain disclosure requirements pending resolution of the question of accrual.

51. The AICPA committee's report (dated July 17, 1973) was in the form of a memorandum setting forth the views of those committee members favoring and those opposing accrual of losses from future catastrophes. In the course of its study, the AICPA committee had gathered considerable data on the subject, in part from a survey of member companies of the American Insurance Association, and this information was made available to the Board.

52. On August 2, 1973, the SEC announced in *Accounting Series Release No. 145* that property and casualty insurance companies should not change their method of accounting for catastrophe losses "until a single method has been adopted by the Financial Accounting Standards Board."

53. The Board issued the Discussion Memorandum on March 13, 1974, and held a public hearing on the subject on May 13, 1974. The Board received 87 position papers, letters of comment, and outlines of oral presentations in response to the Discussion Memorandum. Eighteen presentations were made at the public hearing.

54. An Exposure Draft of a proposed Statement on "Accounting for Contingencies" was issued on October 21, 1974. The Board received 212 letters of comment on the Exposure Draft.

**Appendix C**

**BASIS FOR CONCLUSIONS**

55. This Appendix discusses factors deemed significant by members of the Board in reaching the conclusions in this Statement, including various alternatives considered and reasons for accepting some and rejecting others.

**SCOPE OF THIS STATEMENT**

56. Some respondents to the Exposure Draft proposed that the Statement not deal with accrual and disclosure of loss contingencies in general but, rather, only with the following three specific matters: "self-insurance," risks of losses from catastrophes assumed by property and casualty insurance companies including reinsurance companies, and threat of expropriation. As the basis for that position, they noted that the Discussion Memorandum considered those three matters at length. Other respondents suggested that catastrophe losses be dealt with in a separate Statement.

57. The Board has concluded, however, that the broad issue of accrual and disclosure of loss contingencies should be dealt with in a single Statement, just as the Discussion Memorandum encompassed

13-o

"the broad issue of accounting for future losses."[10] As the Discussion Memorandum stated, "future losses of all types presently known to affect enterprises and new types of future losses that may arise are conceptually included in the scope of this project." The three matters dealt with at length in the Discussion Memorandum were used "as examples to assist in the evaluation and development of criteria for accounting for future losses," and other examples were discussed. The Board has concluded that loss contingencies such as those given as examples in paragraph 4 of this Statement have common characteristics and that questions about accounting for and reporting of those contingencies should be resolved comprehensively. It is for that reason, also, that the Board believes it inappropriate to deal with catastrophe losses in a separate Statement.

58. A question has been raised whether uncollectibility of receivables and product warranties constitute contingencies within the scope of this Statement. The Board recognizes that uncertainties associated with uncollectibility of some receivables and some product warranties are likely to be, in part, inherent in making accounting estimates (described in paragraph 2) as well as, in part, the type of uncertainties that give rise to a contingency (described in paragraph 1). The Board believes that no useful purpose would be served by attempting to distinguish between those two types of uncertainties for purposes of establishing conditions for accrual of uncollectible receivables and product warranties. Consequently, those matters are deemed to be contingencies within the definition of paragraph 1 and should be accounted for pursuant to the provisions of this Statement.

## ACCRUAL OF LOSS CONTINGENCIES

59. Paragraph 8 requires that a loss contingency be accrued if the two specified conditions are met. The purpose of those conditions is to require accrual of losses when they are reasonably estimable and relate to the current or a prior period. The requirement that the loss be reasonably estimable is intended to prevent accrual in the financial statements of amounts so uncertain as to impair the integrity of those statements. The Board has concluded that disclosure is preferable to accrual when a reasonable estimate of

loss cannot be made. Further, even losses that are reasonably estimable should not be accrued if it is not probable that an asset has been impaired or a liability has been incurred at the date of an enterprise's financial statements because those losses relate to a future period rather than the current or a prior period. Attribution of a loss to events or activities of the current or prior periods is an element of asset impairment or liability incurrence.

60. In establishing the conditions in paragraph 8, Board members considered the factors discussed in paragraphs 61–101. Individual Board members gave greater weight to some factors than to others.

### Accounting Accruals Do Not Provide Protection Against Losses

61. Accrual of a loss related to a contingency does not create or set aside funds to lessen the possible financial impact of a loss, although some respondents to the Discussion Memorandum and the Exposure Draft argued to the contrary. The Board believes that confusion exists between accounting accruals (sometimes referred to as "accounting reserves") and the reserving or setting aside of specific assets to be used for a particular purpose or contingency. Accounting accruals are simply a method of allocating costs among accounting periods and have no effect on an enterprise's cash flow. An enterprise may choose to maintain or have access to sufficient liquid assets to replace or repair lost or damaged property or to pay claims in case a loss occurs. Alternatively, it may transfer the risk to others by purchasing insurance. Those are financial decisions, and if enterprise management decides to do neither, the presence or absence of an accrued credit balance on the balance sheet will have no effect on the consequences of that decision. The accounting standards set forth in this Statement do not affect the fundamental business economics of that decision.

62. In that regard, some respondents to the Discussion Memorandum and the Exposure Draft contended that an accounting standard that does not permit periodic accrual of so-called "self-insurance reserves" and, in the case of insurance companies, so-called "catastrophe reserves" will force enterprises to purchase insurance or reinsurance because the "protection" afforded by the accrual would no

---

[10]The Board believes that *contingencies* is a more descriptive term than *future losses*, and the Discussion Memorandum indicated that the project would necessarily involve reconsideration of both *ARB No. 50* and Chapter 6 of *ARB No. 43*.

longer exist. Those accruals, however, in no way protect the assets available to replace or repair uninsured property that may be lost or damaged, or to satisfy claims that are not covered by insurance, or, in the case of insurance companies, to satisfy the claims of insured parties. Accrual, in and of itself, provides no financial protection that is not available in the absence of accrual.

63. The sole result of accrual, for financial accounting and reporting purposes, is allocation of costs among accounting periods. Some respondents to the Discussion Memorandum and the Exposure Draft took the position that estimated losses from loss contingencies should be accrued even before available information indicates that it is probable that an asset has been impaired or a liability has been incurred to avoid reporting net income that fluctuates widely from period to period. In their view, financial statement users may be misled by those fluctuations. They believe that estimated losses should be accrued without regard to whether the loss relates to the current period if, based on experience, it is reasonable to expect losses sometime in the future.

64. Financial statement users have indicated, however, that information about earnings variability is important to them. Two elements often cited as basic to the decision models of many financial statement users are (a) expected return—the predicted amount and timing of the return on an investment—and (b) risk—the variability of that expected return. If the nature of an enterprise's operations is such that irregularities in the incurrence of losses cause variations in periodic net income, that fact should not be obscured by accruing for anticipated losses that do not relate to the current period.

65. The Board recognizes that some investors may have a preference for investments in enterprises having a stable pattern of earnings, because that indicates lesser uncertainty or risk than fluctuating earnings. That preference, in turn, is perceived by many as having a favorable effect on the market prices of those enterprises' securities. If accruals for such matters as future uninsured losses and catastrophes were prohibited, some respondents contended, enterprises would be forced to purchase insurance or reinsurance to achieve the more stable pattern of reported earnings that tends to accompany the use of an "accounting reserve." Insurance or reinsurance reduces or eliminates risks and the inherent earnings fluctuations that accompany risks. Unlike insurance and reinsurance, however, the use of "accounting reserves"

does not reduce or eliminate risk. The Board rejects the contention, therefore, that the use of "accounting reserves" is an alternative to insurance and reinsurance in protecting against risk. Earnings fluctuations are inherent in risk retention, and they should be reported as they occur. The Board cannot sanction the use of an accounting procedure to create the illusion of protection from risk when, in fact, protection does not exist.

66. The Board has also considered the argument that periodic accrual of losses without regard to whether an asset has been impaired or liability incurred is justified on grounds of comparability of financial statements among enterprises. Some respondents contended, for example, that accrual is necessary to make the financial statements of enterprises that do not purchase insurance comparable to those of enterprises that do purchase insurance (and report the premiums as expenses) and to make the financial statements of property and casualty insurance companies comparable regardless of the extent to which reinsurance has been purchased. In the Board's view, however, to report activity when there has been none would obscure a fundamental difference in circumstance between enterprises that transfer risks to others and those that do not.

**Financial Accounting and Reporting Reflects Primarily the Effects of Past Transactions and Existing Conditions**

67. Financial accounting and reporting reflects primarily the effects of past transactions and existing conditions, not future transactions or conditions. For example, paragraph 35 of *APB Statement No. 4*, "Basic Concepts and Accounting Principles Underlying Financial Statements of Business Enterprises," states:

> Financial accounting and financial statements are primarily historical in that information about events that have taken place provides the basic data of financial accounting and financial statements.

68. The first condition in paragraph 8—that a loss contingency not be accrued until it is probable that an asset has been impaired or a liability has been incurred—is consistent with this concept of financial accounting and financial statements. That condition is not so past-oriented that accrual of a loss must await the occurrence of the confirming future event, for example, final adjudication or settlement of a lawsuit. The condition requires only that it be probable

132

that the confirming future event will occur. The condition is intended to prohibit the recognition of a liability when it is not probable that one has been incurred and to prohibit the accrual of an asset impairment when it is not probable that an asset of an enterprise has been impaired.

**The Concept of a Liability**

69. In many cases, the accrual of a loss contingency results in the recording of a liability, for example, accruals for a probable tax assessment, a warranty obligation, or a probable loss resulting from the guarantee of indebtedness of others. In the course of its deliberations, therefore, the Board found it relevant to consider the concept of a liability as expressed in accounting literature.

70. The economic obligations of an enterprise are defined in paragraph 58 of *APB Statement No. 4* as "its present responsibilities to transfer economic resources or provide services to other entities in the future." Two aspects of that definition are especially relevant to accounting for contingencies: first, that liabilities are *present* responsibilities and, second, that they are obligations to *other entities*. Those notions are supported by other definitions of liabilities in published accounting literature, for example:

> Liabilities are claims of creditors against the enterprise, arising out of past activities, that are to be satisfied by the disbursement or utilization of corporate resources.[11]

> A liability is the result of a transaction of the past, not of the future.[12]

71. The condition in paragraph 8(a)—that a loss contingency shall be accrued if it is probable that a liability has been incurred—is intended to proscribe recognition of losses that relate to future periods but to require accrual of losses that relate to the current or a prior period (assuming the amount of loss can be reasonably estimated—see paragraph 8(b)).

72. Liability definitions also generally require that the amount of an economic obligation be known or

susceptible of reasonable estimation before it is recorded as a liability. For example:

> [Liabilities] are measured by cash received, by the established price of noncash assets or services received, or by estimates of a definitive character when the amount owing cannot be measured more precisely.[13]

> The amount of the liability must be the subject of calculation or of close estimation.[14]

73. The condition in paragraph 8(b)—that an estimated loss from a loss contingency not be accrued until the amount of loss can be reasonably estimated—is consistent with this feature of the liability concept.

**Accounting for Impairment of Value of Assets**

74. The accrual of some loss contingencies may result in recording the impairment of the value of an asset rather than in recording a liability, for example, accruals for expropriation of assets or uncollectible receivables. Accounting presently recognizes impairments of the value of assets such as the following:

a. Paragraph 9 of Chapter 3A, "Current Assets and Current Liabilities," of *ARB No. 43* provides that "in the case of marketable securities where market value is less than cost by a substantial amount and it is evident that the decline in market value is not due to a mere temporary condition, the amount to be included as a current asset should not exceed the market value."

b. Statement 5 of Chapter 4, "Inventory Pricing," of *ARB No. 43* states that "a departure from the cost basis of pricing the inventory is required when the utility of the goods is no longer as great as its cost. . . . A loss of utility is to be reflected as a charge against the revenues of the period in which it occurs."

c. Paragraph 19(h) of *APB Opinion No. 18*, "The Equity Method of Accounting for Investments in Common Stock," states that "a loss in value of an

---

[11]American Accounting Association, *Accounting and Reporting Standards for Corporate Financial Statements and Preceding Statements and Supplements* (Sarasota, Fla.: AAA, 1957), p. 16.

[12]Maurice Moonitz, "The Changing Concept of Liabilities," *The Journal of Accountancy*, May 1960, p. 44.

[13]American Accounting Association, *Accounting and Reporting Standards for Corporate Financial Statements*, p. 16.

[14]Maurice Moonitz, "The Changing Concept of Liabilities," p. 44.

investment which is other than a temporary de-
cline should be recognized the same as a loss in
value of other long-term assets."

d. Paragraph 15 of *APB Opinion No. 30*, "Report-
ing the Results of Operations," states that "if a
loss is expected from the proposed sale or aban-
donment of a segment, the estimated loss should
be provided for at the measurement date. . . ."
Paragraph 14 states that the measurement date is
the date on which management "commits itself to
a formal plan to dispose of a segment of the busi-
ness, whether by sale or abandonment."

e. Paragraph 183 of *APB Statement No. 4* states that
"when enterprise assets are damaged by others,
asset amounts are written down to recoverable
costs and a loss is recorded."

75. A recurring principle underlying all of these ref-
erences to asset impairments in the accounting litera-
ture is that a loss should not be accrued until it is
probable that an asset *has been* impaired and the
amount of the loss can be reasonably estimated. As
indicated by those references, impairment is recog-
nized, for instance, when a non-temporary decline in
the market price of marketable securities below cost
*has taken place*, when the utility of inventory *is no
longer* as great as its cost, when a commitment, in
terms of a formal plan, *has been made* to abandon a
segment of a business or to sell a segment at less than
its carrying amount, when enterprise assets *are dam-
aged*, and so forth. The condition in paragraph 8(a) is
intended to proscribe accrual of losses that relate to
future periods, and the condition in paragraph 8(b)
further requires that the amount of loss be reasonably
estimable before it is accrued.

**The Matching Concept**

76. A number of respondents to the Discussion
Memorandum and the Exposure Draft noted that
losses from certain types of contingencies are likely
to occur irregularly over an extended period of
time encompassing a number of accounting periods.
In their view, the matching process in accounting
requires that estimated losses from those types of
contingencies be accrued in each accounting period
even if not directly related to events or activities of
the period.

77. *APB Statement No. 4* explicitly avoids using the
term "matching" because it has a variety of meanings
in the accounting literature. In its broadest sense,
matching refers to the entire process of income
determination—described in paragraph 147 of *APB*

*Statement No. 4* as "identifying, measuring, and relat-
ing revenue and expenses of an enterprise for an ac-
counting period." Matching may also be used in a
more limited sense to refer only to the process of ex-
pense recognition or in an even more limited sense to
refer to the recognition of expenses by associating
costs with revenue on a cause and effect basis.

78. Three pervasive principles for recognizing costs
as expenses are set forth in paragraphs 156–160 of
*APB Statement No. 4* as follows:

> *Associating Cause and Effect.* . . . Some
> costs are recognized as expenses on the basis
> of a presumed direct association with specific
> revenue . . . recognizing them as expenses ac-
> companies recognition of the revenue.

> *Systematic and Rational Allocation.* . . . If
> an asset provides benefits for several periods
> its cost is allocated to the periods in a
> systematic and rational manner in the absence
> of a more direct basis for associating cause
> and effect.

> *Immediate Recognition.* Some costs are as-
> sociated with the current accounting period as
> expenses because (1) costs incurred during
> the period provide no discernible future ben-
> efits, (2) costs recorded as assets in prior peri-
> ods no longer provide discernible benefits or
> (3) allocating costs either on the basis of asso-
> ciation with revenue or among several ac-
> counting periods is considered to serve no
> useful purpose.

79. Some who believe that matching requires ac-
crual of losses that are likely to occur irregularly over
an extended period of time encompassing a number
of accounting periods cite the systematic and rational
allocation principle of expense recognition as justifi-
cation for their position. That principle, however, in-
volves the systematic and rational allocation of the
cost of an asset (an asset that *has been* acquired)
throughout the estimated periods that the asset pro-
vides benefits or the systematic and rational accrual
of the amount of some obligations (obligations that
*have been* incurred) throughout the estimated periods
that the obligations are incurred. The customary de-
preciation of plant and equipment is an example of
the former; when reasonably estimable, the accrual
of vacation pay is an example of the latter. The sys-
tematic and rational allocation principle has no appli-
cation to assets that are expected to be acquired in the

**FAS5**                     *FASB Statement of Standards*

future or to obligations that are expected to be incurred in the future.

80. Matching, in the sense of recognizing expenses by associating costs with specific revenue on a cause and effect basis, is a consideration in relation to accrual for such matters as uncollectible receivables and warranty obligations. For example, most enterprises that make credit sales or warrant their products or services regularly incur losses from uncollectible receivables and warranty obligations. Frequently, those losses can be associated with revenue on a cause and effect basis. If the amount of those losses can be reasonably estimated, paragraph 8 of this Statement requires accrual if it is probable that an asset has been impaired (estimated uncollectible receivables) or that a liability has been incurred (estimated warranty claims).

**Spreading the Burden of Irregularly Occurring Costs to Successive Generations of Customers and Shareholders**

81. Some respondents to the Discussion Memorandum and the Exposure Draft contended that all costs of doing business should be accrued in each accounting period so that successive generations of customers and shareholders would bear their share of all costs including those that occur irregularly. It would seem, however, that those irregularly occurring costs are usually borne by customers through pricing policy and that pricing is not necessarily dependent upon financial accounting and reporting practices. With regard to accrual on grounds that it enables successive generations of shareholders to bear their share of irregularly occurring costs, see paragraphs 63–65.

**Conservatism**

82. On the grounds of conservatism, some respondents supported accrual of estimated losses from loss contingencies before available information indicates that it is probable that an asset has been impaired or a liability has been incurred. Conservatism is indicated as one of the "characteristics and limitations" of financial accounting in paragraph 35 of *APB Statement No. 4* as follows:

> *Conservatism.* The uncertainties that surround the preparation of financial statements are reflected in a general tendency toward early recognition of unfavorable events and minimization of the amount of net assets and net income.

83. Conservatism is further discussed in paragraph 171 of *APB Statement No. 4:*

> *Conservatism.* Frequently, assets and liabilities are measured in a context of significant uncertainties. Historically, managers, investors, and accountants have generally preferred that possible errors in measurement be in the direction of understatement rather than overstatement of net income and net assets. This has led to the convention of conservatism....

84. The conditions for accrual in paragraph 8 are not inconsistent with the accounting concept of conservatism. Those conditions are not intended to be so rigid that they require virtual certainty before a loss is accrued. They require only that it be *probable* that an asset has been impaired or a liability has been incurred and that the amount of loss be *reasonably* estimable. In the absence of that probability or estimability, however, the Board has concluded that disclosure is preferable to accruing in the financial statements amounts so uncertain as to impair the integrity of the financial statements.

**Risk of Future Loss or Damage of Enterprise Property, Injury to Others, Damage to the Property of Others, and Business Interruption**

85. Some persons contend that the decision not to purchase insurance against losses that can be reasonably expected some time in the future (such as risk of loss or damage of enterprise property, injury to others, damage to the property of others, and business interruption) justifies periodic accrual for those losses without regard to whether it is probable that an asset has been impaired or a liability incurred at the date of the financial statements. As a basis for their position, they frequently cite the following factors: matching of revenue and expense, spreading the burden of irregularly occurring costs to successive generations of customers, and conservatism. They also believe that accrual of estimated losses from those types of risks improves the comparability of the financial statements of enterprises that do not insure with those of enterprises that purchase insurance. Some contend that a prohibition against periodic accrual for uninsured losses will force enterprises to purchase insurance coverage that would not otherwise be purchased.

86. In the Board's judgment, however, the mere existence of risk, at the date of an enterprise's financial

statements, does not mean that a loss should be accrued. Anticipation of asset impairments or liabilities or losses from business interruption that do not relate to the current or a prior period is not justified by the matching concept.

87. The Board's views regarding the contention that periodic accrual for uninsured losses is a way of providing protection against loss and improving comparability among enterprises that do and do not purchase insurance, and the contention that prohibition of accrual will force enterprises to purchase insurance, are discussed in paragraphs 61–66. The Board's position regarding periodic accrual for uninsured risks and other loss contingencies on the grounds of spreading the burden of irregularly occurring costs to successive generations of customers or on the grounds of conservatism is discussed in paragraphs 81–84.

88. Some respondents to the Exposure Draft said that prohibition against periodic accrual for uninsured losses would be detrimental to government contractors because requirements of Federal government agencies in auditing costs subject to procurement regulations currently allow reimbursement for periodic accruals for uninsured losses only if they are included in the contractor's financial statements. Contract reimbursement and financial accounting and reporting may well have different objectives. Accordingly, the provisions of this Statement may not be appropriate for contract reimbursement purposes.

## Catastrophe Losses of Property and Casualty Insurance Companies

89. At the time that a property and casualty insurance company or reinsurance company issues an insurance policy covering risk of loss from catastrophes, a contingency arises. The contingency is the risk of loss *assumed* by the insurance company, that is, the risk of loss from catastrophes that may occur *during the term of the policy.*

90. Some respondents to the Discussion Memorandum and the Exposure Draft proposed that insurance companies accrue estimated losses from catastrophes including both those that may occur during the terms of insurance policies in force and those that may occur beyond the terms of policies in force. Other respondents proposed that some portion of the premium revenue of a property and casualty insurance company be deferred beyond the terms of insurance policies in force to provide what, in substance, is an

estimated liability for future catastrophe losses. Some respondents proposed that accrual of estimated losses or deferral of premiums is permitted but not required. On the other hand, some respondents to the Discussion Memorandum and the Exposure Draft were opposed to any accrual for future catastrophe losses by means of an estimated liability or deferral of premium revenue. Because those estimated liabilities and revenue deferrals have come to be referred to as "catastrophe reserves," that term will be used in paragraphs 91–101 for convenience.

91. In response to the Exposure Draft, it was recommended that the FASB appoint a special committee to study further the matter of catastrophe reserve accounting and to make recommendations thereon. The Board has concluded, however, that its own research and that of others (mentioned in Appendix B to this Statement and summarized in the Discussion Memorandum), the written responses received to the Discussion Memorandum, the presentations made at the public hearing, and the letters of comment on the Exposure Draft provide the Board with sufficient information with which to reach a conclusion.

92. Proponents of catastrophe reserve accounting generally cite the following reasons for their position:

a. *Catastrophes certain to occur.* Over the long term, catastrophes are certain to occur; therefore, they are not contingencies.

b. *Predictability of catastrophe losses.* On the basis of experience and by application of appropriate statistical techniques, catastrophe losses can be predicted over the long term with reasonable accuracy.

c. *Matching.* Some portion of property and casualty insurance premiums is intended to cover losses that usually occur infrequently and at intervals longer than both the terms of the policies in force and the financial accounting and reporting period. Catastrophe losses should, therefore, be accrued when the revenue is recognized (or premiums should be deferred beyond the terms of policies in force to periods in which the catastrophes occur) to match catastrophe losses with the related revenue.

d. *Stabilization of reported income.* Catastrophe reserve accounting stabilizes reported income and avoids erratic variations caused by irregularly occurring catastrophes.

e. *Comparability.* Reinsurance premiums paid by a prime insurer are said to be similar to accrual of

136

catastrophe losses prior to their occurrence because the reinsurance premiums paid reduce income before a catastrophe loss occurs. Accrual of catastrophe losses as an expense prior to occurrence of a catastrophe makes the financial statements of property and casualty insurance companies comparable regardless of the extent to which reinsurance has been purchased.

f.  *Non-accrual would force purchase of reinsurance.* Non-accrual of catastrophe losses will force property and casualty insurance companies to purchase reinsurance.

g.  *Generations of policyholders.* Periodic accrual of estimated catastrophe losses charges each generation of policyholders with its share of the loss through the premium structure.

93. The Board does not find those arguments persuasive. The fact that over the long term catastrophes are certain to occur does not justify accrual before the catastrophes occur. As stated in paragraph 59, the purpose of the conditions for accrual in paragraph 8 is to require accrual of losses if they are reasonably estimable *and relate to the current or a prior period.* An enterprise may know with certainty, for example, next year's administrative salaries, but that does not justify accrual in the current accounting period because those salaries do not relate to that period. As indicated in paragraphs 67–68, financial accounting and reporting reflects primarily the effects of past transactions and existing conditions, not future transactions or conditions; accrual for losses from catastrophes that are expected to occur *beyond the terms of insurance policies in force* would amount to accrual of a liability before one has been incurred. Existing policyholders are insured only during the period covered by their insurance contracts; an insurance company is not presently obligated to policyholders for catastrophes that may occur after expiration of their policies. Accrual for those catastrophe losses would record a liability that is inconsistent with the concept of a liability discussed in paragraphs 69–73.

94. The Board recognizes that the costs of catastrophes to insurance companies are large and are incurred irregularly and that insurance companies recoup those costs in the long run through periodic adjustments in the premiums charged to policyholders. It is the view of the Board, however, that the long-run nature of pricing of premiums should not be a determinant of the time when a liability is recorded.

95. The AICPA Industry Audit Guide, "Audits of Fire and Casualty Insurance Companies," describes accounting for premiums as follows (pp. 24–25):

> As soon as a policy is issued promising to indemnify for loss, the insurance company incurs a potential liability. The company may be called upon to pay the full amount of the policy, a portion of the policy, or nothing. It would be impossible to try to measure the liability under a single policy. However, since insurance is based on the law of averages, one may estimate from experience the loss on a large number of policies.

> As state supervision of insurance developed, the insurance departments set about providing a legal basis for determining the potential liability under outstanding policies in order to establish an ample reserve for the protection of policyholders and provide a uniform method of calculation. It was recognized that, since the premium is expected to pay losses and expenses, and provide a margin of profit over the term of the policy, the portion measured by the unexpired term should be adequate to pay policy liabilities (principally losses and loss expenses) and return premiums during the unexpired term on a uniform basis for all companies. Therefore the unearned premium was adopted as the basis for computing the unknown liability on unexpired policies.

96. Because unearned premiums represents the "unknown liability," the Board is of the view that it is inappropriate to accrue an additional amount as an estimate for that same unknown liability. Further, in the Board's view, deferral of premiums beyond the terms of policies in force is inconsistent with the concept of revenue recognition set forth in the Audit Guide and is without any conceptual basis. Moreover, the Board believes that its conclusion regarding the time at which accruals shall be made for catastrophic losses is consistent with the Audit Guide. It should be noted that this Statement does not prohibit (and, in fact, requires) accrual of a *net* loss (that is, a loss in excess of deferred premiums) that probably will be incurred on insurance policies that are in force, provided that the loss can be reasonably estimated, just as accrual of net losses on long-term construction-type contracts is required (see *ARB No. 45,* "Long-Term Construction-Type Contracts").

97. With respect to catastrophes that may occur within the terms of policies in force, to satisfy the conditions for accrual in paragraph 8, the occurrence of catastrophes would have to be probable during the terms of those policies, and the amounts of losses therefrom would have to be reasonably estimable. The letters of comment and position papers received in response to the Discussion Memorandum and the Exposure Draft and presentations at the public hearing lead the Board to conclude that neither the timing of catastrophes nor the amounts of losses therefrom are reasonably predictable within the terms of policies in force.

98. The Board is of the view that accrual of losses from catastrophes is not justified by the accounting concept of matching. Systematic and rational allocation does not apply to costs that have not been incurred. The Board recognizes that large and irregularly occurring costs must of necessity be considered in systematically and rationally determining premiums to be charged to customers but does not believe that pricing considerations should dictate the accrual of losses for financial accounting purposes. The Board also does not believe that matching in the sense of recognizing expenses by associating losses with specific revenue on a cause and effect basis is, in and of itself, a basis for accrual of catastrophe losses prior to the event causing the loss. The Board believes that, for the reasons stated in paragraphs 94–96, there can be no presumed direct association with specific revenue prior to the event causing the catastrophe loss.

99. The Board's views regarding justification of periodic accrual of catastrophe reserves on grounds of (a) stabilizing reported income, (b) improving comparability among financial statements of insurance companies, and (c) preventing the "forced" purchase of reinsurance are discussed in paragraphs 61–66.

100. The argument that accrual of catastrophe reserves enables each generation of policyholders to bear its share of the losses through the premiums that it is charged is also questionable because amounts established for premiums are not necessarily dependent on financial accounting and reporting practices.

101. The Board considered the proposal that catastrophe reserve accounting be permitted but not made mandatory. Whether it is probable that an asset has been impaired or a liability incurred is determined by the circumstances, not by choice. Accordingly, the conditions for accrual in paragraph 8 apply to all loss contingencies, including risk of loss from catastrophes assumed by property and casualty insurance companies and reinsurance companies. In the Board's view, the use of different methods to report catastrophe losses in similar circumstances cannot be justified.

## APPLICABILITY TO LIFE INSURANCE COMPANIES

102. Some respondents to the Exposure Draft inquired as to whether the conditions for accrual in paragraph 8 are intended to change accounting practices of life insurance companies. This Statement does not amend FASB Statement No. 60, *Accounting and Reporting by Insurance Enterprises.*

## DISCLOSURE OF NONINSURANCE

103. A number of respondents to the Exposure Draft inquired as to whether it is the Board's intent to require disclosure of noninsurance or underinsurance. Some recommended that the Board require disclosures with respect to uninsured risks that enterprises ordinarily insure against. Others said that they were unable to define risks that would ordinarily be insured against because the insurance practices of enterprises are so varied. Because of the problems involved in developing operational criteria for disclosure of noninsured or underinsured risks, this Statement does not require disclosure of uninsured risks. However, the Board does not discourage those disclosures in appropriate circumstances.

## EFFECTIVE DATE AND TRANSITION

104. The Board considered three alternative approaches to a change in the method of accounting for contingencies: (1) prior period adjustment, (2) the "cumulative effect" method described in *APB Opinion No. 20*, "Accounting Changes," and (3) retention of amounts accrued for contingencies that do not meet the conditions for accrual in paragraph 8 until those amounts are exhausted by actual losses charged thereto. The Exposure Draft had proposed the change be effected by the prior period adjustment method. A large number of respondents to the Exposure Draft, however, opposed the prior period adjustment method for a number of reasons, including significant difficulties involved in determining the degree of

**FAS5**              *FASB Statement of Standards*

probability and estimability that had existed in prior periods as would have been required if the conditions in paragraph 8 were applied retroactively. On further consideration of all the circumstances, the Board has concluded that use of the "cumulative effect" method described in *APB Opinion No. 20* represents a satisfactory solution and has concluded that the effective date in paragraph 20 is advisable.